# Lexington & Eastern Railway Co. v. Edna Robinson, by Ance Robinson, Her Next Friend.

(Decided November 21, 1919.)

## Appeal from Breathitt Circuit Court.

1. Damages—Inadequate and Excessive Damages.—A verdict of $5,-000 for an injury to one's eye caused by a cinder held to be excessive, the evidence not being sufficient to establish a case of permanent injury.

2. New Trial—Verdict Against Evidence.—Where in a suit for damages for injury to one's eye the proof of the only attending physicians is rather conclusive that the condition is probably due to causes other than the temporary presence of a cinder, a verdict for the plaintiff being against the decided weight of the evidence a new trial should be ordered.

BENJAMIN D. WARFIELD, O. H. POLLARD and SAMUEL M. WILSON for appellant.

J. M. McDANIEL, KELLY KASH, HAZELRIGG & HAZELRIGG and HOBSON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Edna Robinson, ten years of age, in company with a girl cousin sixteen years old became a passenger on a train of the appellant company at Jackson, Ky., her destination being Haddix, some eight or ten miles distant. Edna's father accompanied them to the train. One of the front seats in the ladies' coach having just been vacated they were seated there, Edna being next to the window, which was open. Her companion's father (Edna's uncle), took a seat in the coach just opposite the girls, but later went into the smoking car. In passing through a tunnel on their way to Haddix, appellee claims that a hot cinder came through the window and struck her in the eye.

After their tickets had been collected and the conductor was on his second trip through the train, and before reaching the tunnel, the girls testify they, in a loud voice, requested the conductor to close the window; this request was made when he was some two or three seats from them; they say he turned, looked at them and towards the window, and continued collecting tickets. He did not lower the window, and the girls claim they were unable to do so. Appellee suffered greatly with her eye

that night, and the suceeding day and night, and her pain was such that she returned to her home the second day and went with her father to see a physician, Dr. Hogg, who told them the eye was in such a condition he could do nothing for it, but recommended the application of some liniment. This gave some relief. Two or three days later, or about five days after the accident, appellee consulted Dr. Wilgus Back, and she says he removed a cinder from her eye. Though her eyes had been well and strong before the accident she says she has been unable to read or to use her eyes since that day and was still suffering from them at the time of trial three years later.

There have been three trials of this case. A verdict of $250.00, was set aside by consent; a second trial resulted in a hung jury and in the third, the one from which the present appeal is prosecuted, appellee was awarded damages in the sum of $5,000.00.

The evidence in behalf of appellee is anything but satisfactory, yet sufficient to take the case to the jury. However, the verdict is not only against the weight of the evidence but the amount awarded is so excessive that for both reasons a reversal must be ordered.

Appellee introduced in her behalf Dr. W. P. Hogg, who testified that he met appellee and her father on the street, or in his office, he did not recall which, as it had been some two or three years previous; he did not recall anything much about it; to the best of his knowledge the girl's eye was swollen; he was uncertain whether he prescribed any treatment.

In answer to a hypothetical question he states that the condition of the eye might be permanent.

Dr. Wilgus Back, introduced by appellant, says that appellee did not consult him with reference to an injury to her eye; that she had a stye on her eye, and he operated on it, which gave her relief. He says he did not take a cinder out of her eye, and there was no evidence of a cinder having been in her eye; he never saw her again from that day until he met her at the government hospital, where she was being treated for some eye trouble. This was a year or two after her visit to him. He testified to the same effect on each of the previous trials. At the time of the last trial he was the regular surgeon for the appellant, but at the time he attended appellee he was not so employed by the company.

Dr. T. F. Wickliffe, also introduced by the appellant, is an eye, ear, nose and throat specialist in charge of the government hospital at Jackson; says he first saw the appellee March 27, 1914, just after the hospital had been opened. She came to the hospital to have her eyes examined; he made a thorough examination of her eyes and found she had catarrhal conjunctivitis in both eyes—this is an inflammation of the conjunctiva, the serous lining of the lids and covering of part of the eyeball. This was her only ailment. There was no evidence of any inflammation produced by a cinder; she made no reference to any cinder; that a cinder in the eye will produce a redness of the eyelid, or what is called hyperaemia, which is a congestion of the blood vessels caused by an excessive amount of blood being brought to one spot. He testified that a slippery elm poultice, which appellee's aunt had made and applied to her eyes while at her home in Haddix, was not the proper remedy or treatment as this would likely have caused more inflammation.

Appellee was called before the jury and an examination there made of her eyes by this witness, who states he could find no evidence of any injury to either eye due to a cinder. The condition he found was caused either by far-sightedness or near-sightedness, he thought more probably it was the former. A cinder in one eye would not produce catarrhal conjunctivitis in both; that he had never seen any evidence of any injury to her eye by a cinder; that catarrhal conjunctivitis could be produced by a cinder remaining in the eye a long time, but the inflammation would be temporary if removed shortly. It will be recalled at this point that according to appellee's testimony Dr. Back removed the cinder within about five days after the accident.

Continuing his testimony, Dr. Wickliffe says, if the eye had been damaged by a cinder there would be some evidence of the injury; that the optic nerve is so far back that it could not be injured by a cinder under any circumstances, and that appellee would only suffer pain from straining the eyes. There were no active ulcers on the girl's eye at the time of the examination, and even though a cinder had injured the eye months before in the absence of such an ulcer she would experience no pain from reading. He reiterates that in his judgment appellee is far-sighted and this and not a cinder is the

cause of her trouble, and this condition can be corrected by glasses, though he did not give a prescription for glasses. He says her eyes were inflamed when he examined them on the first and second trials; they are still affected; she has catarrhal lids and this condition could be produced by neglect. Catarrhal conjunctivitis acute is a mild form of a catarrhal inflammation of the conjunctivia, evidenced by a hyperaemia and mucoid discharge. This may be caused by any local irritant, such as dust, smoke, etc. With proper treatment the patient gets well in a few weeks. It will pass into a chronic form only through neglect, improper treatment, or the continued presence of the irritant.

In answer to a hypothetical question he makes this answer: ''Well, yes, you would say that is a permanent injury if that question is stated correctly and fairly.'' But this answer was of no probative value, as this witness had testified after several examinations that the trouble with the appellee's eyes was due, in his opinion, to far-sightedness, and he had found no evidence of any injury produced by a cinder. It was not necessary for him to assume a state of fact. The necessity for stating a case hypothetically arises where the witness has no personal knowledge of the facts.

These three were the only physicians who testified, and one cannot read their evidence without the conviction that an award of $5,000.00 is grossly excessive and, to use the language of the Civil Code (sec. 340), it appears to have been given under the influence of passion or prejudice. According to the testimony appellee's trouble can be arrested by the use of glasses, and though the accident happened at least three years prior to the last trial it is nowhere in evidence that any effort or attempt has ever been made to supply this necessary, effective and simple relief.

Appellee and her cousin testified, in rebuttal, that Edna did not consult Dr. Back for a stye, that it was a girl by the name of Etta Robinson that had the stye and not appellee.

We would not be understood as minimizing in any way the seriousness of an injury to the eye, but it seems reasonably certain the condition of appellee's eyes is not permanent; on the contrary, is such as can be overcome or corrected in some degree at least through the use of glasses. It is probable the parties have confused

the condition testified to by the physicians with what is known in optometry as sympathetic ophthalmia, which is a serous or plastic inflammation of the uveal tract in one eye due to the effect of a similar inflammation in the other. It usually occurs from five to eight weeks after injury to the exciting eye. The uveal tract consists of the iris (muscle curtain forming the pupil), ciliary body (muscle of accommodation) and choroid (dark brown nutrient membrane in back part of the eye). Such inflammation is due to a perforation into the interior of the eye of traumatic or infective origin and rarely, if ever, occurs without a perforating lesion, and usually terminates in blindness. But such symptons or conditions were not disclosed by an examination of appellee's eyes according to the testimony. Besides, sympathetic ophthalmia seldom follows the removal of a substance, such as a cinder, and if there be any permanent effect it is not evidenced by inflammation but by a scar on the cornea. If this scar is over the pupil vision is interfered with, otherwise no subjective symptoms obtain.

Upon a return of this case if appellee has not been provided with suitable glasses we suggest that this be done, so that upon a retrial both the jury and the court will have the benefit of the result or effect obtained from their use. This test will tend largely to prevent injustice being done to either of the parties.

For the reasons herein stated the judgment of the lower court is reversed with instructions to award appellant a new trial.