## Lexington & Eastern Railway Co. v. Sexton, By, Etc.

(Decided December 9, 1921.)

### Appeal from Breathitt Circuit Court.

1. Appeal and Error—Law of the Case.—When a case is brought to the Court of Appeals the opinion is conclusive in all trials thereafter and is the " law of the case" upon all questions either decided in the opinion or presented by the record and passed unnoticed therein, since such matters, although unnoticed in the opinion, stand approved; but this rule does not apply to subsequent

issues brought into the case nor to any issue or question which the record did present at the time of the first opinion and which the court expressly declined to determine or pass upon.

2. Costs—Security for Costs.—Under section 616 of the Civil Code of Practice a nonresident plaintiff may be required to execute a bond for cost and the same is true under section 619 with reference to a guardian of an infant and where the proper steps have been taken to require such a bond, and the facts authorize it, it is error not to do so. But such bond is required for the benefit of the defendant or opposing litigant and the officers of the court, and if the one whose duty it was to execute the bond succeeds upon the trial and recovers a judgment against his adversary who sought its execution, the error of the court in not requiring it becomes immaterial and is not one affecting substantial rights so as to require a reversal of the judgment in favor of the one guilty of the noncompliance with the Code provisions.

3 Appeal and Error—Verdice—Excessive—Evidence.—Evidence examined, as set out in the opinion, and the conclusion reached that the verdict was neither excessive nor was it flagrantly against the evidence.

B. D WARFIELD, C. H. POLLARD and SAMUEL M. WILSON for appellant.

J. M. McDANIEL, HOBSON & HOBSON and HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is the second appeal of this case and is the third verdict returned in favor of plaintiff. Upon the first trial there was a verdict in her favor of $250.00, which was set aside by consent of parties; a second one resulted in a hung jury, and upon the third trial plaintiff recovered a judgment for $5,000.00, which was reversed on appeal to this court in an opinion reported in 186 Ky. 739. After the return of the case there was another verdict for plaintiff for the sum of $1,800.00, and defendant's motion for a new trial having been overruled, it prosecutes this appeal.

Many alleged errors are relied on for a reversal of the judgment appealed from, but the former opinion forecloses our right to consider many of them, under the "law of the case" rule. This court gives a broader application to that rule than do courts of some other jurisdictions. We have uniformly extended it so as to bar on a second appeal not only all questions that were actually determined on the first one, but likewise all questions which were involved in the first record or which could

have been presented under the record therein, though unnoticed and though no reference was made thereto in the first opinion. If, however, the first opinion showed expressly on its face that the matters relied on subsequent thereto were not considered or determined they will be left open and not affected by the rule. Langhorn, Jackson & Co. v. Wiley, 115 S. W. (Ky.) 759; Wall's Exec. v. Dimmitt, 141 Ky. 715; Harcourt & Co. v. Redman, 149 Ky. 612; Wheeler v. C., N. O. & T. P. Ry. Co., 171 Ky. 436; Bates v. City of Monticello, 173 Ky. 244; New Bell Jellico Coal Co. v. Sowards, 162 Ky. 443; Louisville Ry. Co. v. Osborn, 171 Ky. 348; Borderland Coal Co. v. Kearns, idem. 626; Chreste v. Louisville Railway Co., 173 Ky. 486; Consolidated Coal Co. v. Moore, 179 Ky. 293, and Schrodt's Executor v. Schrodt, 189 Ky. 457. Of course, the rule applies only where the issues are the same and, when questions of evidence are involved, where the evidence is substantially the same, and as stated it does not apply where the court in the former opinion expressly declined to pass upon the question.

Applying the rule to this appeal, the alleged errors in giving and refusing instructions cannot be considered by us, although we should conclude they possessed merit, for the same instructions were offered, given and refused at the trial which was under review in the former opinion and the same errors were relied on then as now. The same is true with reference to some alleged erroneous testimony and which for the same reason we are without authority to consider.

The sole ground for reversing the judgment on the former appeal was thus stated in the opinion: "The evidence in behalf of appellee is anything but satisfactory, yet sufficient to take the case to the jury. However, the verdict is not only against the weight of the evidence but the amount awarded is so excessive that for both reasons a reversal must be ordered." The opinion then proceeds with a brief *resume* of the testimony heard upon the trial as relating to the extent of injury to plaintiff's eye, and whether or not it was permanent, and from the evidence we concluded that the size of the verdict ($5,000.00) indicated that it was based upon a permanent injury and that the weight of the evidence was to the contrary, and the verdict was therefore excessive.

At the next trial in which the judgment appealed from was rendered, some additional evidence was heard upon that issue from witnesses introduced by both plaintiff

and defendant; and whether that additional testimony was sufficient to remove the grounds upon which the former judgment was reversed, is one of the questions presented for our determination on this appeal. Another one is whether the court erred in refusing to require plaintiff to execute bond for cost under the facts presented, and if so, whether defendant is entitled to a reversal therefor.

The trial reviewed on the first appeal was had nearly three years after plaintiff received her injury and the negligence relied on, as well as the condition of her eye up to the time of that trial, will be found briefly stated in our former opinion referred to, and none of the testimony relating thereto will be repeated in this opinion. The trial which we are called upon to review on this appeal occurred about three years and nine months after that trial, and the testimony upon the whole shows no improvement in plaintiff's eye, but if anything it has grown steadily worse; and some of the additional six medical experts heard upon the last trial say that, according to their opinion, the affliction of her eye is permanent. We are convinced that the testimony upon the whole is sufficient to show that the cinder which flew into plaintiff's eye did not lodge or penetrate its cornea, but lodged in the inner lining of her under left eyelid, called by the physicians conjunctiva, and that the inflammation of that lining, which has continued since the cinder got in the eye, produced the conjunctivitis with which the eye has been afflicted, according to the testimony, continuously since that time. There is some evidence that she is also suffering from blepharitis, which is an inflammation as well as thickening of the margin of the under lid of her left eye. At least three of the newly introduced medical witnesses stated, in substance, that from a history of the case given in a hypothetical question propounded to them (which the former opinion tacitly approved) it was their opinion that the present condition of plaintiff's eye was attributable to the cinder getting into it, and which forms the basis of her suit.

Dr. Trapp, a new witness introduced by defendant, on cross-examination, said that the present condition of plaintiff's eye was "usually caused by a germ or low vitality," but said that it might be caused by an injury, and when asked whether "it might follow an injury from a cinder" answered "certainly."

Dr. Stucky, another new witness for defendant, was asked on cross-examination, "Well, do you say that if she has suffered constantly for six years and still suffers that her present suffering has no connection with the cinder?" and answered, "If she has suffered for that length of time and the other ocular conditions verify it, it might be permanent."

Dr. McClure, a new witness introduced by plaintiff, and who is a specialist in the treatment of eyes, expressed doubts whether the present condition of plaintiff's eye could be cured and that he thought it was permanent. He said that plaintiff was not suffering with trachoma, but with chronic conjunctivitis "manifesting itself in a general thickening of the lining of the lid, from which there was poured out purulent secretion" or a pus or mucus discharge from the lower lid. He also stated that from the history of the case the condition he found could have been produced by the cinder, and that "I can conceive of a condition that the lid can get into that would affect the vision of the patient."

Dr. C. A. Jacobs, an optometrist of Lima, Ohio, to whom plaintiff applied for glasses for her eyes, was introduced for the first time by defendant and he testified that he supplied her with glasses to relieve the permanent condition of farsightedness. He discovered at the time no condition of the eye which he thought resulted from the cinder, but on being asked in a hypothetical question, incorporating the history of the case, whether the condition of her eye could have been produced by the cinder answered, "I would say so." The preponderance of the medical testimony is to the effect that the present condition of plaintiff's eye is congenital or due to other causes than the cinder getting into it; but we are not prepared to say that the verdict now under review is flagrantly against the evidence upon the issue as to whether the present condition of the eye was produced by the cinder, especially in view of the fact that at the time of the accident and prior thereto it is shown by uncontradicted evidence that plaintiff's eye was, at least, apparently sound and free from inflammation, and that since then she has suffered constant pain and her eye has been constantly inflamed and irritated. Surely that condition could not have been produced from congenital causes *instantaneously*. It may be that the eye has not been properly treated, or that the best care of it has not been taken, but these matters were settled by the former

appeal, as we have seen, and it is too late now to disturb the verdict because of any such derelictions on plaintiff's part. We have also not overlooked the fact that three juries have found in plaintiff's favor, and under all the facts and circumstances, we have concluded that we are not authorized to reverse the judgment upon the ground that it is flagrantly against the evidence, nor are we authorized to reverse it because the verdict is excessive, which was the chief ground for our former opinion.

The suit, as originally filed, was one by plaintiff by her next friend, Anse Robinson, who was her father, she being ten years of age at the time. On August 27, 1918, plaintiff married Wright Sexton, who lived in Tennessee, and where he and his wife resided for some time thereafter. Subsequently he obtained a position at Lima, Ohio, where plaintiff resided with him as his wife till the trial now under review. Before that trial and after she had arrived at the age of fourteen years, she appeared in the Breathitt county court and selected Charles Terry as her statutory guardian, whom the court appointed, and by an amended petition the action was prosecuted by him as guardian for plaintiff instead of by her father as her next friend. Upon the filing of that amendment defendant took the necessary steps to require her and her guardian to execute a bond for cost as required by sections 616 and 619 of the Civil Code, but the court overruled its motions and allowed the action to be prosecuted without the execution of the required bond, and complaint is made of that ruling on this appeal.

We are satisfied that the court should have required the execution of the bond as requested by defendant, but such bonds are for the benefit of the defendant and the officers of the court (Cape v. Cape, 136 Ky. 625, and Murphy v. Murphy, 7 B. Mon. 232), and if the litigant of whom they are required succeeds in the cause we fail to see wherein the error in not requiring the bond to be executed was such a prejudicial one as would authorize a reversal. We have examined a number of cases where the ruling of the court on this question was involved and in each of them the trial court required the bond and this court held that it was error to have done so. We have found no case where the error was committed in behalf of the winning litigant that the judgment was reversed therefor.

New trials are not authorized to be granted unless for "causes affecting materially" the substantial rights of

the party applying therefor. It is difficult to see how the substantial rights of a defendant could be affected by an error in not requiring a bond for cost which is executed primarily for his benefit, when the judgment was against him and in which, as a part of it, he was adjudged to pay the cost. While we are of the opinion that the court erred in not requiring the bond to be executed, yet the error did not, in view of the jury's verdict, affect the substantial rights of the defendant, and for that reason is not such an error as would authorize a reversal.

Complaint is also made of the disqualifications of a juror because of relationship to plaintiff. It develops that only the wife of the juror was related to plaintiff and that remotely, and that the facts concerning the relationship were known by defendant before the return of the verdict. It is doubtful if the relationship was such as to create legal implied bias on the part of the juror, but if otherwise it was the duty of defendant to move for the discharge of the jury after it became informed of the relationship, and if it failed to do so it took its chances and waived the error, if any.

Upon the whole case, after giving it thorough consideration, we have concluded that there are no sufficient grounds presented which would authorize us to disturb the judgment, and it is accordingly affirmed.