Angelo Fiocco, an Infant, by Vincenzo Fiocco, His Guardian ad Litem, Respondent, *v.* Amos D. Carver et al., Appellants.

Motor vehicles — negligence — evidence — presumptions — injury to boy run over by truck from which he fell while riding therein — presumption that the chauffeur was using the truck in defendant's business not sustained by fact that the truck was in the possession of the chauffeur.

1. The fact that a truck was in the possession of defendant's servant sustains a presumption that the custodian was using it in the course of his employment, but this presumption cannot be rested upon when the facts render it obvious that such an inference cannot be drawn.

2. At the time of the injury for which plaintiff seeks to recover, defendant's truck, which ran over plaintiff, was far away from the route which the servant would have followed in the line of his duty, and was crowded with children who had been carried about the streets by the chauffeur who had driven off his route for that purpose. The driver was starting to return to the garage. The plaintiff had climbed upon the truck while it was engaged upon an errand unrelated to the business. The negligence complained of is the setting of the truck in motion without giving the boy sufficient opportunity to reach the ground, his foot having been drawn in the wheel. These facts with other circumstances render the servant's purpose to return to the garage an insufficient resumption of his duty to bind his employer.

*Fiocco* v. *Carver*, 200 App. Div. 33, reversed.

(Argued October 11, 1922; decided November 21, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 21, 1922, affirming a judgment in favor of plaintiff entered upon a verdict.

*George F. Hickey, R. Waldo MacKewan* and *William Butler* for appellants. The injury to the plaintiff was not sustained while the defendant's servant was acting within the scope of his employment or the furtherance of his master's business, but during the abandonment, by the servant, of the performance of his duty to his master. His course of conduct at and immediately prior to the time of the occurrence was not a mere deviation nor an irregular method of performance, but the performance of an independent act outside of the scope of his employment and for his own purposes. (*Coyne* v. *Kennedy*, 229 N. Y. 556; 183 App. Div. 937; *Reilly* v. *Connable*, 214 N. Y. 586; *O'Brien* v. *Stern Brothers*, 223 N. Y. 290; *Fallon* v. *Swackhamer*, 226 N. Y. 444; *Hume* v. *Elder*, 178 App. Div. 652; *Stenzler* v. *Standard G. L. Co.*, 179 App. Div. 774; *Rose* v. *Balfe*, 223 N. Y. 481.) The children riding on the truck were the guests of the chauffeur, not of the defendants, and the defendants are not liable for any mishap that befell any one of them. (*Rolfe* v. *Hewitt*, 227 N. Y. 486.)

*William S. O'Connell* for respondent. The chauffeur at the time of the accident was engaged in the business of the defendants. (*Bila* v. *Bloomingdale*, 184 App. Div. 65; *Jones* v. *Wiegand*, 134 App. Div. 644; *Quinn* v. *Power*, 87 N. Y. 535; *Barmore* v. *V. S. & P. Ry. Co.*, 85 Miss. 26; *Geraty* v. *Nat. Ice Co.*, 16 App. Div. 174; *Clawson* v. *P. A. Motor Car Co.*, 231 N. Y. 273; *Riley* v. *Standard Oil Co.*, 231 N. Y. 301.) The question as to whether or not the chauffeur at the time of the accident was engaged in the business of the defendants was one of fact for the jury. (*Ferris* v. *Sterling*, 214

N. Y. 249; *Connell* v. *Havey*, 125 App. Div. 189; *Cunningham* v. *Castle*, 127 App. Div. 580; *Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129; *Jackson* v. *Third Avenue R. R. Co.*, 47 N. Y. 274; *Froomkin* v. *Brooklyn Daily Eagle Co.*, 113 App. Div. 443.)

CARDOZO, J. The defendants, engaged in business in the city of New York, sent a truckload of merchandise from Manhattan to Staten Island. The duty of the driver when he had made delivery of the load was to bring the truck back to the garage at Twenty-third street and Eleventh avenue on the west side of the city. Instead of doing that, he went, as he tells us, to Hamilton street on the east side, to visit his mother. A neighborhood carnival was in progress in the street. A crowd of boys, dressed in fantastic costumes, as Indians, Uncle Sam, cowboys, and the like, were parties to the frolic. They asked the driver for a ride, and in response to the request, he made a tour of the district, going from Hamilton street to Catherine, then through other streets, and back again to Catherine. At this point he stopped in front of a pool room, and left his truck for a moment to say a word to a friend. It is here that the plaintiff, a child of eleven years, arrived upon the scene. The merrymakers were still crowding about the truck. The plaintiff with a playmate tried to join them. While he was climbing up the side, the driver came back and three times ordered him to get off. As the third order was given, the plaintiff started to come down, but before he could reach the ground, the truck, as he tells us, was started without warning, and his foot was drawn into a wheel. The driver gives a different story, insisting that the boy ran after the moving truck and climbed on the side when it was impossible to see him. All the witnesses agree that the truck as it left Catherine street was still carrying the boys. The driver adds that his purpose then was to go back to the garage. Upon these facts a jury has been

permitted to find that he was in the course of his employment. The ruling was upheld at the Appellate Division by a divided court.

We think the judgment may not stand.

The plaintiff argues that the jury, if it discredited the driver's narrative of the accident, was free to discredit his testimony that there had been a departure from the course of duty. With this out of the case, there is left the conceded fact that a truck belonging to the defendant was in the custody of the defendant's servant. We are reminded that this without more sustains a presumption that the custodian was using it in the course of his employment (*Norris* v. *Kohler*, 41 N. Y. 42, 44; *Ferris* v. *Sterling* 214 N. Y. 249, 253). But the difficulty with the argument is that in this case there *is* more, though credit be accorded to the plaintiff's witnesses exclusively. The presumption disappears when the surrounding circumstances are such that its recognition is unreasonable (*Fallon* v. *Swackhamer*, 226 N. Y. 444, 447). We draw the inference of regularity, in default of evidence rebutting it, presuming, until otherwise advised, that the servant will discharge his duty. We refuse to rest upon presumption, and put the plaintiff to his proof, when the departure from regularity is so obvious that charity can no longer infer an adherence to the course of duty.

Such a departure is here shown, apart altogether from the narrative put before us by the driver. The plaintiff's testimony, confirmed by the testimony of his witnesses, breaks the force of the presumption that might otherwise be indulged, and leaves his case unproved unless something is in the record, in addition to the presumption, to show that the defendant's servant was in the course of the employment. The wagon was an electric truck intended for the transportation of merchandise in connection with the defendants' business. At the time of the accident it was crowded with boys, " packed as thick as sardines," whom the driver was taking on a frolic. They

filled, not only its body, but also the roof and sides and box. Plainly on proof of these facts the presumption vanishes that the driver was discharging his duty to the master. The character of the transaction is so extraordinary, the occupation of the truck by the revellers so dominant and exclusive, as to rebut the inference that the driver was serving his employer at the same time that he was promoting the pleasure of his friends. The dual function, if it existed, can no longer rest upon presumption. Regularity will no longer be taken for granted when irregularity is written over the whole surface of the picture. We will no longer presume anything. What the plaintiff wishes us to find for him, that he must prove.

We turn, then, to the driver's testimony to see whether anything there, whether read by itself or in conjunction with the plaintiff's narrative, gives support for the conclusion that the truck was engaged at the moment of the accident in the business of the master. All that we can find there, when we view it most favorably to the plaintiff, is a suggestion that after a temporary excursion in streets remote from the homeward journey, the servant had at last made up his mind to put an end to his wanderings and return to the garage. He was still far away from the point at which he had first strayed from the path of duty, but his thoughts were homeward bound. Is this enough, in view of all the circumstances, to terminate the temporary abandonment and put him back into the sphere of service? We have refused to limit ourselves by tests that are merely mechanical or formal (*Riley* v. *Standard Oil Co. of N. Y.*, 231 N. Y. 301). Location in time and space are circumstances that may guide the judgment, but will not be suffered to control it, divorced from other circumstances that may characterize the intent of the transaction. The dominant purpose must be proved to be the performance of the master's business. Till then there can be no resumption of a relation which has been broken and suspended.

We think the servant's purpose to return to the garage was insufficient to bring him back within the ambit of his duty. He was indisputably beyond the ambit while making the tour of the neighborhood which ended when he stopped at Catherine street upon a visit to a pool room. Neither the tour nor the stop was incidental to his service. Duty was resumed, if at all, when, ending the tour, he had embarked upon his homeward journey. It was in the very act of starting that the injury was done. The plaintiff had climbed upon the truck while it was at rest in front of the pool room, still engaged upon an errand unrelated to the business. The negligence complained of is the setting of the truck in motion without giving the intruder an opportunity to reach the ground. The self-same act that was the cause of the disaster is supposed to have ended the abandonment and re-established a relation which till then had been suspended. Act and disaster would alike have been avoided if the relation had not been broken. Even then, however, the delinquent servant did not purge himself of wrong. The field of duty once forsaken, is not to be re-entered by acts evincing a divided loyalty and thus continuing the offense. Many of the illicit incidents of the tour about the neighborhood persisted. The company of merrymakers was still swarming about the truck. The servant was still using the property of the master to entertain his friends and help the merriment of the carnival. The presence of these merrymakers was the very circumstance that had prompted the little boy to jump upon the truck, and make himself a party to all the fun and frolic. Add to this that the truck was still far away from the route which it would have traveled if the servant had followed the line of duty from the beginning. We do not need to separate these circumstances and to insist that any one of them alone would be strong enough to shape the judgment. Our concern is with the aggregate. We are not dealing with a case where in the course of a continuing relation,

business and private ends have been co-incidently served. We are dealing with a departure so manifest as to constitute an abandonment of duty, exempting the master from liability till duty is resumed. Viewing the circumstances collectively, we are constrained to the conclusion that at the moment of the wrong complained of, the forces set in motion by the abandonment of duty were still alive and operative. Whether we have regard to circumstances of space or of time or of causal or logical relation, the homeward trip was bound up with the effects of the excursion, the parts interpenetrated and commingled beyond hope of separation. Division more substantial must be shown before a relation, once ignored and abandoned, will be renewed and re-established.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., HOGAN, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.