# Roselle v. Bingham et al.

(Decided December 18, 1931.)

J. S. LUSCHER for appellant.

PETER, LEE, TABB, KRIEGER & HEYBURN for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming in part and reversing in part.

Patricia L. Roselle, a child between four and five years old, was struck and painfully injured by a car driven by James H. Misselbrook, and owned by him. This action was brought by her next friend against James H. Misselbrook and Barry W. Bingham to recover for her injury. On the trial of the case, the jury found for the defendants. The court refused a new trial, and the plaintiff appeals.

The facts shown by the proof are, briefly, these: James H. Misselbrook was going to Louisville on the

River road in his car, and had his friend William Monroe with him. The road was practically straight and level as he approached the place in question. The father of the child lived on the north side of the road and near to it. The grandfather of the child lived just across the road. The paved part of the road was seventeen feet wide. A truck passed going up the road just before Misselbrook reached the place. James Harris, who was raking a yard nearby, testified that, when the truck passed, the child was at the side of the fence on her grandfather's side of the road. He paid no more attention until he heard the brakes locked on the Misselbrook car. He then saw the child going across the road and eight or ten feet from the side. On the other hand, Misselbrook's statement was in these words:

"Well, I was driving to Louisville, across that portion which you see on the plat there, and the road was very straight and I remember seeing this child crouched down by the side of the road, playing with some sand; and the road slopes a bit there, as the plat shows, and suddenly, when I was close to her, the child jumped up, swung around, and, like a man starts a sprint race, the child ran across without even standing up—not directly across the road. . . . When I saw her I took my foot off of the accelerator or throttle and put it in readiness on the foot brake. . . . I remember in passing Mrs. Clark's residence and thinking the child had heard my horn and taken warning to it—I had sounded it —she suddenly got up, with no warning at all, and ran straight across the road—when I say straight across, she ran across somewhat bearing to her right all the time, running quite fast."

Monroe, who was riding with Mr. Misselbrook, says this:

"We came down the River Road, driving together. Mr. Misselbrook was driving and I was sitting by the side of him and when we come to that little cinder track he applied his brakes immediately, and I just looked ahead and I saw a child in motion going across the road. I didn't see the child sitting on the road side, but I saw the child move across the road. He swerved the car and the next thing

I saw was a red pile of bricks very likely to come over my head. I got out of the car and went over and picked the child up.''

Misselbrook turned his car and ran it into the fence, but the side of the car struck the child and injured her, and there were facts shown from it which might be inferred that Misselbrook should have seen the child sooner, and was running very fast.

Appellant insists that the court's instructions to the jury were erroneous, but appellee Bingham insists that his motion for a peremptory instruction in his favor should have been sustained; that the instructions as to him were more favorable to appellant than they should have been, and that as the peremptory instruction in his favor should have been given the verdict in his favor should not be disturbed. The facts on this branch of the case are these:

Misselbrook performed the duties of a butler at Bingham's house. He kept the silver polished; cleaned the windows and looked after Bingham's shoes, ties, and shirts. He had a car of his own. Some days before this, Bingham had asked him the next time he went to town to take his tennis racket with him to be repaired. That day he was going to town to cash his salary check, pay an installment on his car, and get some cigarettes, and had invited Monroe to go with him. He also had in the car the tennis racket which he was taking as Bingham had requested, and, in addition to this, a pair of trousers of Bingham's which he was taking on his own volition to the tailor to be repaired. He had not mentioned this to Bingham, and so far as the evidence shows, he knew nothing of the trip and had nothing to do with the car. The well-settled rule as to the responsibility of the master for the act of a servant is thus stated in Cincinnati, N. O & T. P. Ry. Co. v. Rue, 142 Ky. 699, 134 S. W. 1144, 1146, 34 L. R. A. (N. S.) 200:

''Beyond the scope of his employment the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the service for which he was engaged, cannot be regarded as the act of the master.'' To the same effect, see 39 C. J., p. 1295, sec. 1490.

If Bingham had asked a neighbor the next time he went to town to take the racket in to be repaired for him, and the neighbor while going to town struck appellant, clearly Bingham would not have been responsible for this, simply because the man had his racket in the car, or a pair of trousers that he was taking along belonging to him. If Bingham and Misselbrook had been working under the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.), and Misselbrook had been injured in this collision, clearly he could not have looked to Bingham for his injury without proof that the collision occurred in the course of his employment. There is no proof that it was any part of Misselbrook's employment to use his car in Bingham's service, or to make trips to Louisville at any time. It was Misselbrook's own car which he could use as he chose, and the real purpose of his trip to Louisville was to cash his check and make a payment on his car. The fact that he had appellee Bingham's racket in it, or a pair of trousers of his, was simply incidental to the trip. The court therefore should have instructed the jury peremptorily to find for appellee Bingham on the evidence, and the judgment in his favor is affirmed.

This leaves for consideration the instruction of the court as to Misselbrook. Instruction 1, given by the court, is in these words:

"It was the duty of the defendant, James H. Misselbrook, at the time, place and on the occasion concerning which you have heard evidence, to operate his automobile at a reasonable rate of speed, not exceeding 40 miles an hour, to keep it under reasonable control, and to keep a lookout ahead for persons upon the highway in front or so nearly in front of him as to be in danger of coming into collision with his automobile; and if you believe from the evidence that he failed in any one or more of said duties, and thereby caused his automobile to come into collision with the plaintiff, Patricia L. Roselle, and the plaintiff was injured thereby, the law is for the plaintiff, Patricia L. Roselle, and against the defendants, James H. Misselbrook and Barry Bingham, and you should so find; but unless you so believe from the evidence or if you believe from the evidence that at the time, place and on the occasion referred to therein, the plaintiff, Patricia L. Roselle, went suddenly from the side of and on to the River Road in

front and so near the approaching machine of James H. Misselbrook that even had he been operating said car at a reasonable rate of speed and had it under reasonable control and maintained a lookout, as defined above, he could not have perceived her danger and stopped his machine, slackened its speed or changed its course in time to avoid striking her, the law is for the defendants, James H. Misselbrook and Barry Bingham, and against the plaintiff, Patricia L. Roselle, and you should so find.''

This instruction is not in keeping with Metts' Admr. v. Louisville Gas & Electric Co., 222 Ky. 551, 1 S. W. (2d) 985, 988. In that case reversing the judgment below on account of an instruction very similar to that above quoted, the court directed an instruction to be given that if the jury believed from the evidence that Metts ''was near the path of the truck and that he was seen by its driver or could have been seen by him in the exercise of a reasonable lookout . . . then it became the further duty of the driver to exercise ordinary care . . . to operate said car so as to avoid injury to him.'' This case was followed and approved in Ashland Sanitary Milk Co. v. Messersmith's Admr., 236 Ky. 92, 32 S. W. (2d) 727, 729, where the court affirmed the judgment for the plaintiff, and said this:

''Whatever may have been the view of the court in years past, we have been inclined in recent years to confine the sudden appearance, in so far as infants are concerned, to cases where the injured infant leaves the sidewalk or emerges from behind another vehicle or other obstruction, and appears on the highway in the path of the on-coming vehicle so suddenly that the driver thereof in the exercise of ordinary care could not have prevented the collision with the means at hand if he had been running at a reasonable rate of speed. . . .

''The street was only 20 feet in width. The mother and child were standing in the street on the south side of the car in plain view of the driver of the truck, and only a short distance away from the path of the truck. The situation was such that the child might be expected to move in the pathway of the truck at any time.''

While the facts of those cases are not entirely similar to this, the rule there announced applies here. The basis of the rule is that all persons must take notice of the instinctive tendency of little children to run in excitement. There was proof here that the child was sitting in the gutter, playing in the sand at the side of the road. The photographs filed show that she was near or on the edge of the paved part of the road, and the car running on the right-hand side of the road would have passed close to her. It was a question for the jury whether the driver of the car used ordinary care for the safety of the child after he saw or by ordinary care should have seen her at the side of the road.

Judgment reversed, and cause remanded as to Misselbrook, for a new trial.

The whole court sitting.