Affirming.
On September 24, 1930, John Arthur Clark was killed as he was leaving his home on the River Road near Louisville, when his automobile was struck by a car owned and driven by Sidney Walker, colored. Clark's executrix brought suit for damages against Walker, the Weir Motor Company, a corporation, by whom he was employed, and James R. Weir, who was the president of that company. The court peremptorily directed a verdict for the motor company and Weir. The jury returned a verdict for $20,000 against Walker. The executrix has appealed from the judgment dismissing her petition against the motor company and Weir, and *Page 561 
Walker prosecutes an appeal from the judgment against him.
1. The only ground that Walker offers for a reversal of the judgment is that the verdict is flagrantly against the evidence. Two young men testified that Walker passed them immediately before the collision and that he was going 65 miles an hour. He zigzagged his car across the road, as he apparently saw Clark coming out of his driveway, and ran over on the left-hand side of the road and there struck the Clark car with great force. Clark's machine was then headed toward Louisville and was on its right side. Walker's counsel seem to recognize the telling effect of this evidence, but say that the witnesses were shaken on cross-examination and contradictions were developed to such extent that their evidence was destroyed. It does not seem so to us in its material aspects; but whether so or not, that was a matter of credibility and the weight of the evidence addressed itself to the jury. Their testimony is not all, for there was other evidence tending to substantiate their story as to how the accident occurred, and proving Walker's negligence. Walker testified that he was not driving fast and that Mr. Clark's automobile suddenly emerged from his driveway, obscured by foliage, and struck his machine just as he was passing and knocked him over an embankment. The verdict cannot by any means be regarded as contrary to the evidence. Walker's claim for a reversal of the judgment against him must, therefore, be disallowed.
2. The suit against the Weir Motor Company and James R. Weir is predicated upon the alleged relation of master and servant, or principal and agent, existing between each of them and Walker. There is no dispute as to the facts, but they present an unusual condition and a multiplicity of relations. Walker was employed by the motor company in its garage as a janitor and general utility man. Sometimes he was sent out with a mechanic to haul in a disabled automobile. Weir testified that Walker did anything the company directed him to do and anything which his (Weir's) family told him to do. Walker's wife was a cook in the Weir home. That home was owned by Mrs. Weir and she employed the cook and other servants and paid them out of her individual income. The evidence is that the servants were under her control and management and not of Mr. Weir. *Page 562 
The motor company had placed an automobile, owned by it, at the disposal of the Weir family for use in transporting the servants, or at least the cook, to the house. About 7 o'clock on the morning of the accident, Kennedy, Mrs. Weir's chauffeur, was taking the cook to the house in this car when some engine trouble developed and the machine stopped. He called the garage and asked Herps, the assistant manager then on duty, if there was a mechanic there. When advised that there was not, then, pursuant to the request of the cook, Kennedy asked Herps to tell Walker that his wife wanted him to come and get her and take her to the house so she could get breakfast for the children in time for school. Herps relayed the message, and upon the inferred permission or direction — as the parties respectively regard it — of the assistant manager, Walker got in his own automobile and went to the place where his wife and Kennedy were reported to be. However, when he got there they had gone, having in the meantime got the engine started. In order to see that his wife reached her destination, Walker proceeded on to the Weir home. It was upon this portion of his journey that the fatal accident occurred.
The argument is presented by the appellant that Walker, an employee who had done similar service before, was sent by the company to the rescue of the disabled car which was owned by the company; that he was upon the company's mission when the accident occurred, and the relation of master and servant clearly existed at the time. It is also argued that without losing that relationship to the motor company, Walker was the servant of Weir, personally. This is based upon the evidence that Walker did anything the Weir family called upon him to do; that although Mrs. Weir paid and controlled the household servants, yet Mr. Weir was the head of the family, since the emancipatory statutes concerning married women have not affected the personal relation between husband and wife, said to be yet controlled by the common law which merges the identity of the wife in that of her husband; hence that when the cook called for one who was the servant of both the motor company and Weir to take her to the Weir home to perform her duties there and he was sent upon that errand, he was engaged in the service of both parties. Coupled with these specific arguments there is invoked the rule that the burden *Page 563 
rested upon the master to show that his servant was not engaged in his business at the time; and the further rule that, if there be any doubt whether a servant injuring a third person was acting within the scope of his employment, the doubt will be resolved against the master since he set the servant in motion.
With respect to the company's liability it does not seem to us that Walker was doing anything for or furthering the interests of the company nor acting within the scope of his employment, even though it be conceded that his employment embraced the duty of going to the relief of disabled automobiles. Instead of being directed to do that on this occasion, it seems rather that he was excused from duty at the garage to serve another. He was not driving the master's machine, so that there was no presumption of agency to be overcome. See Ashland Coca Cola Bottling Co. v. Ellison,252 Ky. 172, 66 S.W.2d 52. He was not sent to do service upon the company's car, loaned to the president's family, which was reported to be disabled, but went in order that he might render aid to the cook and enable her to get to her work on time. The corporation was not interested in getting the family's servant to her work. Where a servant is not doing the work for which he was employed, expressly or impliedly, his act cannot be regarded as the act of the master, and when an agent is not acting within the scope of his agency he is a stranger to his principal. Brooks v. Gray-Von Allmen Sanitary Milk Company,211 Ky. 462, 277 S.W. 816, 46 A.L.R. 1207.
In Louisville Lozier Company v. Sallee, 167 Ky. 499,180 S.W. 841, the president and majority stockholder of an automobile corporation, while using the company's car for a pleasure drive, permitted his companion to drive it and she negligently injured another while doing so. It was held that the corporation was not chargeable with the negligence, as the use of the machine was for social purposes of the president even though his companions were regarded as probable purchasers of the machine. This principle was more closely applied in Roselle v. Bingham, 242 Ky. 496, 46 S.W.2d 784, where a butler, while going to the city in his own automobile to attend to his personal affairs, took his master's tennis racket and trousers for repair as a favor to the master. While on this journey the butler *Page 564 
struck and injured a third person. It was held that the master was not responsible.
In Stegman v. Sturtevant Haley Beef Supply Co.,243 Mass. 269, 137 N.E. 363, where a salesman, using an automobile furnished him for soliciting and calling on customers, injured another while taking a carpenter to the residence of the corporation's president for the benefit of the president and by his direction, it was held that the salesman was not engaged in the corporation's business or acting within the scope of his employment, even though he intended afterwards to take the president from his residence to the corporation's place of business.
In the collation of cases by American Law Reports, under the title "Owner's liability for injury by automobile while being used for servant's own pleasure or business," will be found cases more or less analogous to the instant one, in which the masters were held not, chargeable even though the automobiles being used by the servants belonged to their masters, hence presenting stronger claims against them. 22 A.L.R. 1397, 1433; 45 A.L.R. 477, 482; 50 A.L.R. 1450; 69 A.L.R. 1051; 1058; 80 A.L.R. 725, 732. Although the tort was committed by Walker within the time of his employment, it was outside the course or scope of his employment. He had been excused from his labors for the company to serve another, and the contractual relation of principal and agent was for the time suspended. We cannot regard him as being about his master's business, either incidentally or primarily.
For the appeal against Weir, personally, let us draw in the facts closer towards liability than perhaps may be justified, by assuming that the cook and the chauffeur driving her were Weir's employees and not his wife's, and that Weir had engaged to have her transported to the house on that morning. Certainly, he had not undertaken to do more than to have the family chauffeur to do this in that particular car. Neither he nor his family called upon Walker to do this. He did not authorize either of those servants to engage another to take her. The fact that they called upon the cook's husband to come and get her and take her to the house would seem to be no different than if they had called upon a passing motorist, a stranger, or she had continued her journey on a street car. The vicarious *Page 565 
liability of Weir for the negligence of Walker is yet further away when we consider that Walker at the time was not aiding or transporting the cook, but of his own accord was seeking to know whether or not she had reached her destination. In the absence of the relationship of principal and agent, it is clear that Weir could not be held responsible. See American Savings Life Insurance Company v. Riplinger, 249 Ky. 8,60 S.W.2d 115.
We are of the opinion, therefore, that the trial court correctly ruled that both the corporation and Weir were free from liability.
Wherefore the judgment is affirmed upon both appeals.