## W. T. Liter Co., Inc., v. Graham.
### Same v. Ballard.

Feb. 6, 1940.

Charles W. Morris and Frank A. Garlove for appellant.
Stephen S. Jones and Harry Lukins for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The appellant, W. T. Liter Company, is appealing from judgments in favor of the appellees, C. E. Graham and Lee H. Ballard, in the amounts of $500 and $10,000, respectively. The awards were for damages resulting from a collision between a police car in which the appellees were riding and one of the appellant's trucks, which was being driven by George Wheeler. The accident occurred at Seventh and Market Streets in Louisville shortly after 1 a. m. January 1, 1938. George Wheeler, an employee of the appellant, was a party defendant, but he is not appealing.

The Liter Company was engaged in the trucking business. One branch of their work was road construction, in connection with which they operated trucks and certain road machinery, including a gasoline road shovel. The company also operated several trucks which were used in hauling garbage for the city of Louisville. Wheeler had been employed by the company in connection with its road work for a period of approximately 12 years. He operated the shovel and looked after its maintenance.

The company had been using the shovel on a job near St. Helens, in the southwestern part of Jefferson county, during the latter part of 1937. The company's garage was at Prospect in the northeastern part of the county. The job on which the shovel was being used closed down December 4th. According to the testimony of Wheeler, who testified for the appellees, he went from the company's garage, where he had been working since December 4th, to the place where the shovel was left, around 11 a. m. Friday, December 31st, for the purpose of making some repairs on the shovel. He said that: He drove one of the company's trucks when he made this trip, but apprised no one of his intentions to make a trip; he did not tell anyone later that he had been to St. Helens; it was necessary for him to start the motor which operated the shovel, and he had to put water in the radiator before he started the motor; he also put water in the radiator of the truck on which the shovel was located; and he needed someone to help him finish the repairs, so he left the equipment without draining

the radiators thinking that he would return shortly to complete the work.

Late in the afternoon of the 31st, Wheeler rode into Louisville from Prospect with W. T. Liter. They stopped on Story Avenue, where they met Walter Vaughan, who drove one of the company's garbage trucks. Liter paid Vaughan his wages and told Wheeler that there would be no work until the following Monday. Wheeler rode with Vaughan to the latter's home. They arrived there around 6 o'clock. Wheeler told Vaughan that he wanted to borrow the truck (a Chevrolet dump truck), but did not tell him for what purpose he wanted to use it. Vaughan testified that he had no authority to let Wheeler have the truck, and that he had never loaned it to him before.

Wheeler went on to his wife's home. A man and a woman were visiting Mrs. Wheeler. Wheeler testified that around 8 or 8:30 he told his wife that he had to go out to St. Helens to drain the radiators on the equipment, and that she suggested that she and her friends go along with him. Wheeler testified further that he went to Vaughan's house about 8:30 and got the truck. He returned to his wife's home, picked up his party and took them to the Silver Slipper dance hall near St. Helens. The Silver Slipper was about two blocks beyond the place where he would have turned to go to the road machinery. He said that the party reached there about 9 o'clock and stayed until about one. All four of them had some drinks while there. Everyone except Wheeler danced some, but he said that he did not do so because he still had on his working clothes. When the party left the Silver Slipper they went to the place where the machinery was located. Wheeler testified that he drained the two radiators. The collision occurred as he was returning from the place where the road machinery was located. Graham sustained certain painful injuries, and Ballard sustained an injury to his back. These two policemen pursued Wheeler after the collision and arrested him near Seventh and Market Streets.

The appellant moved for a peremptory instruction at the conclusion of plaintiffs' evidence and also at the conclusion of all the evidence. Both motions were overruled. Reversal is urged upon several grounds; one of

them being that the company was entitled to a peremptory instruction. Having reached the conclusion that such an instruction should have been given in favor of the company, it becomes unnecessary to discuss other questions raised.

The allegations were that Wheeler, an employee of the company, was driving its truck as its agent on business of the company, and that he was acting within the scope of his authority. This, of course, was denied. Upon pleadings and proof, Wheeler being a witness for the plaintiffs, a prima facie case was made. It then became the duty of the company, if it was to avoid liability, to bring forth clear and convincing proof to overcome the presumption that Wheeler, who was driving one of the company's trucks at the time of the accident, was engaged in the company's business. Home Laundry Company v. Cook, 277 Ky. 8, 125 S. W. (2d) 763; Galloway Motor Company v. Huffman's Adm'r, 281 Ky. 841, 137 S. W. (2d) 379. The evidence for the company, some of which has been reviewed above, was to the effect that, while Wheeler's duties required him to operate and look after the shovel, the shovel had not been used since December 4th; he had been given no instructions that it was to be used at any particular time; he was notified late in the afternoon of December 31st that there would be no work until the following Monday; he had no authority to take one of the company's trucks out at night; and he had no authority to borrow the truck operated by Vaughan in the garbage business and Vaughan had no authority to lend it to him. It sought to show also that Wheeler was not acting within the scope of his authority at the time of the collision.

It is our conclusion that, conceding the scope of Wheeler's employment included looking after the shovel, which in all probability would include draining the radiators on the shovel and the truck at times, the facts and circumstances are such that it would be a far-fetched proposition to hold that Wheeler was acting within the scope of his authority at the time of the collision. As indicated, he had taken the truck without any permission or authority so to do. When told there would be no work until Monday he said nothing to Liter about the shovel. He started his venture early Friday night, but

after his working hours, and went to the Silver Slipper where he spent approximately four hours before going to the place where the shovel was located.

The cases of Roselle v. Bingham, 242 Ky. 496, 46 S. W. (2d) 784, and Corbin Fruit Company v. Decker, 252 Ky. 766, 68 S. W. (2d) 434, 439, present circumstances more favorable to the appellees' cause than are presented in the case before us. In those cases it was held that peremptory instructions should have been given in favor of the master.

In the Bingham case, Misselbrook, a butler in the Bingham household, struck a child while he was driving toward Louisville in his own car. He was going into Louisville for the purpose of cashing his salary check, making a payment on his car and getting some cigarettes. He had in the car a tennis racket which Bingham had requested that he have repaired, and also a pair of trousers belonging to Bingham which he was taking on his own volition to the tailor to be repaired. No mention was made to Bingham of the trip and he had nothing to do with the car. It was held that a peremptory instruction should have been given in Bingham's favor, since the tasks being performed for him were merely incidental to Misselbrook's trip.

In the Decker case, it was shown that an employee of the Corbin Fruit Company worked until noon Saturday and was paid his regular wages at that time. Without any knowledge of the company he took one of its trucks to move his own goods. On one of his trips he delivered some produce to one of the company's customers. Thereafter he had a collision with the car in which Decker and Edwards were riding. During the course of the opinion in which it was held that the Fruit Company was entitled to a directed verdict, it was said:

"From the moment of the delivery of the candy and chewing gum, if he did deliver it to Mrs. McDonald's store on one of those trips, thereafter the relation of principal and agent, or employer and employee, did not exist between Smith and the Corbin Fruit Company. Reverting to the language in Fiocco v. Carver, supra [234 N. Y. 219, 137 N. E. 309]: 'Location in time and space are circumstances that may guide the judgment, but will not be suf-

fered to control it, divorced from other circumstances that may characterize the intent of the transaction. The dominant purpose must be proved to be the performance of the master's business. Till then there can be no resumption of a relation which has been broken and suspended. We think the servant's purpose to return to the garage was insufficient to bring him back within the ambit of his duty.'"

While Wheeler was driving one of the company's garbage trucks when he ran into the car in which the appellees were riding, he had not been instructed to use it, nor had he been instructed to go to the place where the shovel was located, and Vaughan, who let him have the truck, had no authority so to do. Wheeler's duties as operator of the shovel and looking after it did not include that he go out after midnight in a drunken state to drain radiators. Whatever he did for his master, if he did anything, was certainly incidental to his going out to the Silver Slipper on New Year's Eve.

It follows from what has been said that on the basis of the record before us a peremptory instruction should have been given in favor of the appellant.

Wherefore, the judgment is reversed, with directions for proceedings consistent with this opinion.