# Dr. Pepper Bottling Co. of Kentucky et al. v. Hazelip et al.

Nov. 6, 1940.

Eugene Hubbard, Judge.

334

Lawrence S. Grauman and Selligman, Goldsmith, Everhart & Greenebaum for appellants.

Charles W. Morris and Herman Cohen for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The appellant, Hansford Yates, was a route salesman for the Dr. Pepper Bottling Company, also an appellant, in August, 1938. He had been working for the Company in this capacity for about two years. He operated one of the Company's trucks over two routes in southern Indiana. The town of Corydon was on one of those routes. Yates worked six days a week, not including Sunday. He was paid on a commission basis with a guarantee of $25 per week, but usually made more than the guarantee. Yates sold the Company's products along his designated routes. On occasions a supervisor would accompany him and assist him in the handling of sales. These supervisors worked under the direction of officials of the Company. They supervised no special routes, but were assigned to certain routes from time to time.

On Sunday, August 21, 1938, Yates went to Corydon in his own car, and, at his request, Ernest Gibson, one of the Company's supervisors, went with him. There was to be a fair at Corydon. According to Yates' testi-

mony, he would have made Corydon the next day. He said he decided to go over there on Sunday to see some of the persons who were going to operate stands at the fair about furnishing them some of the Company's products. He also said Monday was a heavy day and he usually got in late from that run. While Yates and Gibson were in Corydon they made arrangements with certain persons to furnish them some of the Company's products. Gibson delivered these products the next day.

Neither Yates' nor Gibson's duties required them to engage in the Company's business on Sunday, and at no time had Yates been authorized to use his own car in carrying on the Company's business. As indicated above, he was a route salesman, who sold the Company's products from one of the Company's trucks. He testified that on two occasions he had worked on Sunday. At one time, with the knowledge of his boss, he had gone to English, Indiana, in a Company truck to get some empty cases. On another occasion he had taken a load of bottled drinks to Lexington in a Company truck.

When Yates and Gibson reached Louisville around six o'clock in the afternoon, they started in the direction of Gibson's home, where they planned to have supper and then go to a picture show. Yates was driving his car east on Main Street just south of the center line. He testified that, as he was near the center of the intersection of Main and 17th Streets, Gibson hollered, "Watch that kid"; that he saw the child running across the street; that he jerked the wheels of his car to the left and applied the brakes; that he then straightened up the car in order to avoid striking the curb; that the right front fender struck the child; and that he stopped his car within 35 or 40 feet. He testified further that there were no cars coming along Main or 17th Street as he reached the intersection. Gibson testified that he saw the child leave the curbing just a little east of 17th Street and start running south across Main Street; that Yates' car was just entering 17th Street at that time; and that he judged the car was about 20 feet from the point where the child was struck (near the center of the street) when he first saw him. The testimony is that Main Street is 50 to 60 feet wide at the scene of the accident.

The injured child, Damon Carl Hazelip, Jr., was an infant under seven years at the time of the accident.

This action was prosecuted by him through J. L. Bolton, his grandfather, as next friend. The trial resulted in a joint verdict against the Company and Yates for $1,200. This appeal is being prosecuted from a judgment on that verdict. The appellants have filed separate briefs.

Among the grounds urged for reversal by the Company is one to the effect that Yates had neither express nor implied authority to use his own automobile on the Sunday in question to transact any business for the Company, and the Company exercised no control over Yates and his automobile on that day, and' that he was not acting within the scope of his authority. Being of the opinion that this position is well founded, we shall confine our discussion of the case as it relates to the Company to this ground.

Appellee insists that there was some evidence of probative value indicating that Yates was acting as the Company's agent on the day in question. He stresses these points: (1) Yates worked for the Company; (2) he was paid by the week, and the Company had the right to discharge him; (3) on the day of the accident he was engaged on a mission directly connected with the Company's business; (4) a route supervisor was with him; and (5) the Company ratified Yates'. acts by having the supervisor finish the work begun by him on the day of the accident. Admittedly, the activities carried on by Yates on the Sunday in question may be looked upon as beneficial to the Company. He was out in search of new or additional business, and, according to his testimony, what he did on Sunday would have shortened his work on the following day. It must not be overlooked, however, that Yates was employed on a commission basis, and that Corydon, the town visited by him on Sunday, was on one of his regular routes. Under the circumstances he had a primary interest in the Sunday enterprise.

Cases of this type must be determined by their own peculiar facts and circumstances. To hold a master liable whenever a servant does something in his behalf would be an unreasonable rule. It is clear to us that the facts and circumstances concerning Yates' employment warrant the conclusion that he was not acting within the scope of his authority, either express or implied, on the Sunday in question. The fact that Gibson

acted as Yates' superior at times does not alter the case. According to the testimony, Gibson made the trip to Corydon at Yates' suggestion. Nor can we agree with the appellee's contention that the delivering of the products to the parties in Corydon, who had been contacted by Yates and Gibson on Sunday, changes the situation. The Company was engaged in selling bottled goods and Corydon was on one of the regular routes. Had the trip not been made on Sunday, the same sales and deliveries might well have been made on the regular route day (Monday). It was not necessary for Yates to make the trip to Corydon on Sunday. He had not been instructed to make it. The trip was not within the line of his regular duties, and it was made without the Company's knowledge or consent. While it may be conceded, as indicated above, that the Company may have benefited from the trip, it is clear that Yates was not acting within the scope of his employment on the Sunday in question. The conclusion reached is supported by the cases of W. T. Liter Company v. Graham, 281 Ky. 634, 136 S. W. (2d) 1059; Grocers Biscuit Co. v. Hinton, 264 Ky. 739, 95 S. W. (2d) 571; Leachman v. Belknap Hardware & Mfg. Co., 260 Ky. 123, 84 S. W. (2d) 46; Corbin Fruit Company v. Decker, 252 Ky. 766, 68 S. W. (2d) 434; American Sav. Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115; Roselle v. Bingham, 242 Ky. 496, 46 S. W. (2d) 784. See also Wilson v. Deegan's Adm'r, 282 Ky. 574, 139 S. W. (2d) 58.

It follows from what has been said that the trial court erred in refusing to grant a peremptory instruction in favor of the Company.

We turn now to the grounds urged for reversal by Yates. They are: (1) The trial court erred in allowing the first amended petition to be filed; (2) there is a defect of parties plaintiff; (3) the trial court erred in not requiring the execution of a bond for costs; (4) the trial court erred in allowing the second amended petition to be filed on the day of the trial; and (5) the jury was erroneously instructed.

The first point is directed toward the filing of an amended petition by Hazelip through his grandfather as next friend, while the motion to dismiss the petition filed by his father as his statutory guardian was pending. It is insisted that this was in effect an entirely new cause of action, and that the trial judge abused the discretion

given him under Section 134 of the Civil Code of Practice in permitting the amendment to be filed. Carl Hazelip was the person injured, and it was his cause of action throughout. We fail to see how the prosecution of the cause through a next friend rather than a statutory guardian could have prejudiced the appellants. See Illinois Central R. Co. v. Head, 119 Ky. 809, 84 S. W. 751, 27 Ky. Law Rep. 270, and Chesapeake & O. Ry. Co. v. Case, 158 Ky. 594, 165 S. W. 968.

As to the alleged defect of parties plaintiff it is insisted that Hazelip had no right to sue by his grandfather as next friend. Subsection 4 of Section 35 of the Civil Code of Practice provides:

> "The action of an infant, or of a person of unsound mind, who resides in a foreign country, and who has a guardian, curator, or committee residing therein, may be brought by such guardian, curator, or committee, or by his next friend."

It is insisted that Damon Carl Hazelip resides in Illinois and not in a foreign country. We have held that a resident of a different state is one who resides in a foreign country. Johnson v. Johnson, 277 Ky. 623, 126 S. W. (2d) 1055; Kidd v. Kidd, 276 Ky. 271, 124 S. W. (2d) 66. It is insisted also that Subsection 4 of Section 35 contemplates that if a next friend is to sue for an infant who is a resident of a foreign country the next friend must likewise be a resident of that country. But Subsection 1 of Section 37 of the Civil Code of Practice provides that one suing as next friend must be a resident of this state.

The question as to whether Hazelip's next friend should have been required to execute bond involves Subsection 2 of Section 37 and Section 619 of the Civil Code of Practice. Subsection 2 of Section 37 provides:

> "A guardian, curator, committee, or next friend who brings or prosecutes an action for a person who is under disability is liable for the costs which accrue during his conduct of the action, unless he be allowed to sue in forma pauperis, by an order of the court, or by an order of the judge thereof during vacation."

Section 619 provides:

> "A guardian, curator, committee or next friend,

suing for a person under disability; and every plaintiff suing as an assignee, except an indorsee of a bill of exchange or a promissory note placed upon the footing of a bill of exchange, when insolvent, may be required to give security for costs; and on failure to do so in a reasonable time after it is directed by the court, upon the motion of the defendant, his action shall be dismissed.''

The motion of appellants for a bond for costs failed to allege that Bolton, the next friend, was insolvent; nor was there any affidavit filed or showing made to that effect. It was said in Davis v. Davis, 182 Ky. 470, 206 S. W. 623, that the bond for costs can be required only when it appears that the next friend is insolvent and when he does not sue in forma pauperis. Aside from this, Hazelip prevailed at the trial. We have held that the failure to require a costs bond is not a reversible error if the plaintiff is the successful litigant. See Lexington & E. Ry. Co. v. Sexton, 193 Ky. 201, 235 S. W. 773.

The objection to the filing of the second amended petition on the day of the trial is directed to the inclusion therein of the allegations that Yates failed to keep a lookout ahead, and that he failed to give reasonable and timely warning of the approach of his automobile to the intersection. Prior to the filing of the second amended petition, the allegation of negligence was that Yates' car was being driven at a high rate of speed, and that it was not under control. We do not think that this was an abuse of discretion on the part of the trial judge under Section 134 of the Civil Code of Practice. Furthermore, Yates did not move for a continuance or furnish proof that he was entitled to a reassignment as provided by Section 136 of the Civil Code of Practice. See Honaker v. Crutchfield, 247 Ky. 495, 57 S. W. (2d) 502; Bullock v. Young, 252 Ky. 640, 67 S. W. (2d) 941.

Lastly, it is insisted that the trial court erred in failing to give a ''sudden appearance'' instruction. Dixon v. Stringer, 277 Ky. 347, 126 S. W. (2d) 448, 451. Granting that there may be cases in which such an instruction should be given, we are of the opinion that the facts and circumstances (heretofore mentioned), pertaining to the accident in which the Hazelip child was injured, are not such as to warrant the giving of such

an instruction. The first instruction given by the court directed the jury to find for Hazelip, if it believed that Yates had violated any of his statutory duties, and to find for Yates unless they so believed. In the Dixon case it was said:

> "Can it with any reason be said that there may be a 'sudden appearance' sufficient to exonerate the driver if he is not observing the duty of keeping a reasonable lookout! If the driver looks neither to the right nor the left, but merely looks down the road or street or at a traffic light in utter disregard of pedestrians on the side of the road or crossing the street, any appearance from the side of the road or street will, as to him, necessarily be a 'sudden appearance' but such 'sudden appearance' should not operate in law to exonerate him from liability."

As pointed out, we do not think that Hazelip's appearance before Yates' car was such a "sudden appearance" as to warrant the giving of such an instruction.

Wherefore, for the reasons set out above, the judgment is reversed as to the Dr. Pepper Bottling Company and affirmed as to Yates.