## Dennes v. Jefferson Meat Market, Incorporated.

(Decided February 22, 1929.)

CHAS. W. MORRIS and FRANK A. GARLOVE for appellant.
BLAKEY, DAVIS & LEWIS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant, W. H. Dennes, whom we shall call the plaintiff, seeks to reverse a judgment entered upon a directed verdict. Introduced as a witness in his own behalf, he testified that the afternoon of Monday, November 7, 1927, was dark and murky, it had rained, the streets were wet and slippery, and at 5 p. m. it was prematurely dark. Plaintiff lived on the east side of First avenue, in Louisville, between Magnolia and Ormsby streets. He was expecting some friends to take dinner with his family that evening. The friends arrived shortly after 5 o'clock, and just as their car was being parked in front of plaintiff's house, it was struck by another car. Plaintiff went out to meet his friends and to ascertain the result of the collision. While standing on the left side of his friend's car, he was struck by a delivery truck belonging to the defendant, Jefferson Meat Market, then being negligently operated and driven in a northerly direction by defendant's chauffeur, Abe Lawson, a colored man. Plaintiff was knocked down and sustained serious personal injuries. He was carried into his home, and for months thereafter suffered as a result thereof, and was unable to work. Lawson went to a nearby house, called the defendant's place of business by telephone, and reported the accident. The police soon arrived and began an investigation of the accident.

On the trial of this action, the plaintiff sought to prove what Lawson said to one of these policemen, as a part of the res gestae. Without objections this policeman was allowed to testify that the chauffeur gave his name as Abe Lawson, but when the policeman was asked what the chauffeur said, counsel interposed objection for the defendant. The objection was sustained by the court, the plaintiff excepted, and avowed that, if permitted to answer, the policeman would say that Lawson had stated, "He had been to make a delivery and was going back to the market." This conversation between the chauffeur and the policeman occurred 40 minutes, if not more, after the accident. The first question before us is: Did the court err in excluding it? Our answer is, "No." In this extremity, the plaintiff called as a witness in his behalf Irwin Bloom, president of the defendant, and proved by him his official connection with the defendant, that Abe Lawson was one of defendant's chauffeurs, was

at work for it that day, and that Lawson had called up the store about 5:35 p. m. and reported the accident. At this point, counsel for plaintiff excused the witness. Thereupon counsel for defendant interrogated Bloom and established by him that Lawson had been sent out about 2:15 or 2:30 that afternoon with probably 10 or 12 orders to deliver, and some collections to make; that defendant had several chauffeurs and delivery trucks; and that they had certain districts allotted to them for their operations. The cruising area allotted to Lawson was bounded on the south by Breckinridge street, extended west so as to take in all the west end of Louisville, and was extended east and southeast so as to take in the Highlands and all of Louisville north thereof except the River Road. Bloom testified that Lawson should have been back by 3:30 or 4 o'clock, and that he had other deliveries for him to make. The point where this accident occurred was about four or five squares south of Breckinridge street, and hence was, according to defendant, outside of the cruising area allotted to Lawson. Shortly after talking to the policeman, Lawson drove this truck to Bosler's Garage, put it up, and then disappeared; hence he was not available as a witness. He made no report of either the deliveries or collections he had made. There was but little further evidence introduced for the plaintiff, except that of his doctor, who testified about his injuries.

At the conclusion of the evidence for the plaintiff, the court directed the jury to return a verdict for the defendant, which was done, and the correctness of that ruling is our next question. Our answer is, it was not correct. The plaintiff had made out a prima facie case when he established that he had received these injuries without fault of his own, by the negligent operation of a car belonging to the defendant, in possession of and being operated during business hours by one of the defendant's chauffeurs. If no further evidence had been introduced, this would have been sufficient to take the case to the jury, and if, upon submission, it had resulted in a verdict for the plaintiff, this would have been sufficient to sustain the verdict; but after the plaintiff excused the witness Bloom, the defendant took the laboring oar and undertook to show that, at the time the plaintiff was struck, Lawson was not engaged in the service of the defendant. That burden was on the defendant after the plaintiff made out a prima facie case. See Wood v. Indianapolis Abat-

toir Co., 178 Ky. 188, 198 S. W. 732; Mullen & Haynes Co. v. Crisp, 207 Ky. 31, 268 S. W. 576.

This case has been thoroughly and elaborately briefed, and to discuss all the authorities cited would be equivalent to the writing of a treatise on motor vehicles, which we are not disposed to do.

It is not necessary for us to determine just how much evidence it would take to overthrow the plaintiff's prima facie case. All we have to say, and all that we are going to say, is that it was not overthrown by the bare statement of Bloom that this accident occurred at a point which was four or five squares south of any point to which he had sent Lawson. It is not every deviation from the line of his duties by a driver that will amount to a departure and will release his master for the driver's negligence. See Fleichmann v. Howe, 213 Ky. 110, 280 S. W. 496; 39 C. J. 1297; 42 C. J. 1110. As the only evidence to undermine the plaintiff's prima facie case was Bloom's testimony that this accident occurred without or beyond the cruising area of Lawson, that is insufficient, because different inferences can be drawn therefrom. It is just as reasonable to infer that during the making of these deliveries something had happened to render it necessary for Lawson to make a slight detour, as it is to infer that he was then serving some purpose of his own. See 42 C. J. 1257.

It seems to us the rule announced in 39 C. J. 1363, is correct: "Where deviation from the course of his employment by the servant is slight and not unusual, the court may, as a matter of law, find that the servant was still executing his master's business. On the other hand, if the deviation is very marked and unusual the court may determine that the servant was not on the master's business at all but on his own. Cases falling between these extremes will be regarded as involving a question of fact for the determination of the jury."

To us it would appear that this deviation was so slight that the court should not have held as a matter of law it was a departure. We regard it rather as a question for the jury, and because it was not submitted to the jury, the judgment is reversed.