# Ashland Coca Cola Bottling Company et al. v. Ellison et al.

(Decided Nov. 9, 1933.)

FRANK C. MALIN and WOODS, STEWART, NICKELL & SMOOT for appellants.

JOHN T. DIEDERICH and BROWNING & REED for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

Upon a joint trial of three suits for damages, arising from the same accident, filed by the appellees, George P. Ellison, C. J. Neekamp, and by J. P. Brady, against the appellants, Ashland Coca Cola Bottling Company and J. L. Howell, judgments for $5,000 were rendered in favor of Ellison and Neekamp, respectively. A verdict for $42.50 in favor of Brady was set aside by the trial court. Appeals are brought from the two $5,000 judgments. There is also an appeal from a $650 judgment in favor of Brady, rendered on a second trial of his case alone, and as well from the order refusing to substitute the $42.50 verdict. Since the Brady Case presents an important question not involved in the other cases, it will be dealt with in a separate opinion. 252 Ky. 183, 64 S. W. (2d) 762.

1. No question is raised on the appeals as to the sufficiency of the evidence of negligence to support the verdicts. The automobile which caused the accident, as the jury found, was owned by the Ashland Coca Cola Bottling Company (which will be referred to as the company) and was being driven by Howell, its local manager. The company insists that it is not liable because the automobile was not being used at the time by Howell as its agent or while he was acting within the scope of his employment. As is often the case, it is not easy to say whether his act was or was not within the

range or orbit of his agency. Our attention is first turned to a summary of the evidence upon which the vicarious liability of the company was placed.

The duties of Howell in his capacity as resident manager of the company were generally those performed by such an officer or employee. They included the supervision of the sale and distribution of the products and direction of the company's traveling salesmen over a territory of four counties, including Carter county. He went about over the field visiting the customers, of whom he had about four hundred, suggesting attractive arrangements of advertising in their stores, maintaining an interest in them, and generally promoting the company's business. He also looked after the advertising matter of the company on and near the highways, and when he observed that any of the signs were in need of replacement or repair he would have that attended to. He had charge of the company's property and was authorized to use and drive its automobile whenever he deemed it necessary to do so on the business of the company. However, in going over the territory he often used his private automobile, but would charge the gasoline to the company. Sometimes he traveled in the company's cars, generally used by its salesmen. He was employed on a salary and gave full time to the company's affairs without any limitation on his hours of service or labor.

On the morning of the day on which the accident occurred, March 10, 1931, Charles Forbes and Charles Hanners came to the company's plant and asked Howell to take their families and themselves to a funeral at a hamlet called Counts Cross Roads, in Carter county. He at first declined to do so, but after a little while sent word that he had business "out there" and would take them. Howell says he meant at Grayson. They agreed to pay him for the service and before leaving he was given $3 on that account. Grayson is about twenty-six miles west of Ashland and Counts Cross Roads is about twelve miles farther west of Grayson. The party left Ashland in Howell's two-seated automobile, but the gas was charged to the company. It was not unusual to use his car in this way. Shortly before reaching Grayson a bearing in the automobile burned out, but it was able to proceed into that town. A salesman of the company, out on his usual route, was at Grayson in its automobile. That car was a one-seated Ford bearing

the familiar Coca Cola emblem and had on it the words, "Drink Coca Cola in Bottles." Howell took this company's car and left his own at Grayson. After attending to some business there he first carried the wives of Forbes and Hanners and a child on to Counts Cross Roads and returned to Grayson, got the two men, and took them there. He and the party ate dinner at a home to which they had gone. Howell did not attend the funeral at a nearby church, but stayed at the house until he thought the services were over at the cemetery. He went there, but the services not having been concluded, he and a friend, Mowrey, drove farther west about three miles to Olive Hill instead of waiting at the cemetery. He remained there a little while and then came back. Taking Forbes and Hanners into the car, he started back to Grayson with them, intending to return for their wives, and then to get his own automobile at Grayson and go back to Ashland. But on the trip from the cemetery to Grayson there was a collision with the automobile in which the appellees were riding, which resulted in the injuries for which they asked damages in these suits. The foregoing is not disputed.

The further evidence of the plaintiffs in substance was, and the argument is, that Howell at the time of the accident was using the car under his general authority and supervision over the company's automobile and other property; that he was on duty all the time because he worked on a monthly salary; was engaged continuously when out of the office in exercising his duties of supervision over the sale and distribution of the company's products and in keeping in touch with its customers and conditions in the territory, including the observation of its advertisements in order to maintain them. A boy testified to having seen Howell in a customer's store at Counts Cross Roads that day, but he does not say Howell talked to any one or did anything there. At that point there is a side road leading from the main highway about four miles to the village of Grahn, where the company had one or perhaps two customers. A witness testified to having seen a Coca Cola car turning around at Grahn, and another to having seen a similar automobile on the road coming from that point about 1 o'clock that day. Nobody said it was Howell in the car, but he testified the company had the exclusive agency for Coca Cola in that territory and

the car involved was the only one of its kind in the country.

From all this evidence the appellees argue that it is a reasonable inference that Howell was attending to the company's business at all times during the day.

The defendant's evidence was, and its argument is, that this was altogether a personal trip from Grayson to the funeral and return to that point. According to the company's general manager, and Howell himself, he had no authority to use the company's automobile for any except the company's business and that he and other employees were strictly forbidden to do so. Howell did have business of the company to look after at Grayson, but he had none beyond there and, in fact, transacted none after leaving Grayson. Neither he nor the automobile went to Grahn, and he is supported in this testimony by other witnesses. He did not go into any store or call upon or see any customer at Counts Cross Roads, Grahn, Olive Hill, or elsewhere. The merchant at Counts Cross Roads testified that he did not see him that day and, so far as he knew, Howell was not in the store, but he was absent from it for an hour or more. Howell and other witnesses testified that he was not in the customer's store that day. In contradiction of Howell's testimony that he had no business to transact at Olive Hill and transacted none, is the testimony of Brady and another witness that long after the accident Howell had stated to them that he went to Olive Hill that day on business. This testimony was not substantive evidence against the company, but only went to the credibility of Howell as a witness. He very vigorously denied having made the statements attributed to him by Brady and the other witness as to having gone to Olive Hill on business of the company. He testified that he told them he went to Grayson on the company's business and related from the witness stand the two items of business which he had transacted there. Howell's companion on the ride to Olive Hill went into a restaurant there, but testified that Howell did not leave the car. However, there is evidence of contradictory statements by the witness upon that point. It is maintanied that the failure of the plaintiffs to produce the customers at the points which they claim he visited is to be regarded as an inference favorable to the defendant. It might be the other way, since the

burden was upon the defense to overcome the presumption.

To hold the company liable, the foregoing facts must be held to show that as an employee or agent of the company he was acting within the scope of his employment or in the line of his duty at the time of the collision. Rather, for the present consideration, they must be held to constitute a scintilla of evidence sufficient to authorize the submission to the jury.

Appellees invoke the rule that the use of an employer's automobile by an employee gives rise to the presumption that he was engaged in the master's business and that proof of such use alone was sufficient to take the case to the jury and to sustain its verdict. It relies upon Wood v. Indianapolis Abattoir Company, 178 Ky. 188, 198 S. W. 732, 733; Mullen & Haynes Company v. Crisp, 207 Ky. 31, 268 S. W. 576; Bowen v. Gradison Construction Company, 224 Ky. 427, 6 S. W. (2d) 481; Dennes v. Jefferson Meat Market, 228 Ky. 164, 14 S. W. (2d) 408; Gainesboro Telephone Company v. Thomas, 234 Ky. 373, 28 S. W. (2d) 34.

Upon the authority of a number of cases, it is said in Wood v. Indianapolis Abattoir Company of Kentucky, supra:

"The authority of the master is implied when it is the duty generally of the agent, under the terms of his employment, to drive the automobile, and when the authority, either express or implied, is proven the presumption is indulged the employee was on the master's business. Thus it has frequently been held that where it not only appears that the defendant was the owner of the machine, but also that it was in charge of his chauffeur, an employee whose duties are to operate an automobile, at the time the injury occurred, such evidence raises a presumption that the chauffeur was engaged in the defendant's business and acting within the scope of his employment, and the burden then shifted to the defendant to prove that the chauffeur was not, at the time, acting for him."

The kind and character of evidence which alone can overcome the presumption that Howell was acting in the course of his employment is thus stated in 2 Blashfield's Cyc. of Automobile Law, sec. 46, p. 1648:

"Courts which affirm the above rule that the presumption as to the scope of employment of a negligent driver raised by proof of the ownership of the car by defendant, or by such proof and proof that he was acting in the general employ of defendant, may be so completely overcome by the evidence of the defendant to the contrary as to warrant taking the case from the jury, recognize, or at least some of them do, that the evidence to the contrary must be of a conclusive or unimpeached character, or must be undisputed, clear and convincing, and that such presumption is not overcome as a matter of law by evidence presented on behalf of the defendant by interested witnesses, or by evidence which is of a suspicious nature, or is impeached to any extent, or by evidence which is contradictory or reasonably subject to contradictory interpretations."

The question before us, narrowed down, is whether or not the inference that the agent was operating the machine at the time in the line of his employment and was engaged in the master's business and the circumstances tending to support that presumption were so surely overcome by that character of evidence which requires this court to say, as a matter of law, that the trial court should have directed a verdict for the defendant.

We may here dispose of the point made by the appellees with which we cannot concur, that the use of the automobile bearing the Coca Cola signs, as above described, is proof in itself that its operation on the highway was in furtherance of the master's business. The case of Shoots v. Standard Oil Company, 181 Minn. 386, 232 N. W. 712, is relied on. The company's car involved in that case had been rebuilt so as to make it as much a vehicle for advertising as for transportation. Behind the driver's seat was a large replica of a container in which the company was selling a certain brand of cylinder oil. The whole machine was painted in the lurid color characterizing the company's advertising. Large letters on the machine proclaimed the virtues claimed for the product. The character of the machine, coupled with some other evidence, including the fact that the driver was advertising manager of the company, was held sufficient to sustain the jury's finding that the employee was not using the car solely for his

own purpose. This case is quite different. The advertising on this car was not of such extent or character as transformed it from strictly the purpose of transportation to that of advertising the company's product except in a small degree. There are cases of this sort of closer application, and they hold that the fact that the employer's name is on the automobile or it is decorated in such a way as to advertise the business is immaterial. Kitz v. Scudder Syrup Company, 199 Ill. App. 605; Reynolds v. Buck, 127 Iowa, 601, 103 N. W. 946.

If the trip beyond Grayson to Counts Cross Roads and return was wholly the private engagement of Howell and was not in part to further the company's business, it cannot, of course, be held liable for the injuries resulting from his negligence during that time. 2 Blashfield's Cyc. of Automobile Law, sec. 28, p. 1409; Crowell v. Duncan, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; Mullen & Haynes Company v. Crisp, supra; American Savings Life Insurance Company v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115. Let us look somewhat analytically to the situation and the circumstances tending to show the venture was purely a personal one so far as the company is concerned.

Although the implied powers of an officer or manager are broader than of one occupying a minor position, where it is shown that such a representative had departed from his line of duty, was violating his direct and express instructions, and was engaged in an enterprise which could not conceivably result in any benefit to the employer, the mere fact that he was using his employer's automobile, maintained by it for the promotion of its own business, cannot impose liability upon the employer for the employee's negligence during the period. See Annotations, 22 A. L. R. 1402; 45 A. L. R. 481; 50 A. L. R. 1450; 68 A. L. R. 1051, and 80 A. L. R. 725. But the character of employment may have an important bearing upon the weight to be accorded the evidence concerning the matter of present agency. It seems to us that where the employee's time is not confined and his duties are such as those of Howell's—calling for general supervision and stimulation of the company's business through traveling over the territory, with general authority to use the company's automobile—circumstances tending to support the charge that he was about his master's business assume an im-

portance and call for consideration greater than would the same circumstances were the employee a minor one, such as a bookkeeper or laborer, with stipulated hours of duty and whose usual duties were of an entirely different nature than doing those things which he was doing at the time of the accident. Howell was not a mere minor employee with limited duties and authority. He was the resident manager, in direct charge of the appellant company's business and property, with broad discretionary powers as to how such business should be cared for and as to the manner of performance of his duties. No clearer or more pertinent statement of the presumption that exists as to the breadth and scope of a managing agent's powers is to be found than that contained in Ackerson v. Erwin M. Jennings Company, 107 Conn. 393, 140 A. 760, 762, 56 A. L. R. 1127, wherein it is said:

" 'The law presumes that an employer intends his employee to have such powers as are reasonably necessary for him to carry on his work for the employer, and such other powers as are reasonably necessary to enable him to carry into effect the powers thus implied.' Russo v. McAviney, 96 Conn. 21, 112 A. 657; Stone v. Hills, 45 Conn. 47, 29 Am. Rep. 635. These implied powers are particularly broad in the case of one acting as a general agent or manager, such a position presupposing a degree of confidence reposed and investiture with liberal powers for the exercise of judgment and discretion in transactions and concerns which are incident or appurtenant to the business of his principal or to that branch of such business which is intrusted to his care and management. The presumption to that effect may well be and is constantly relied upon by persons dealing with such agents. Mechem on Agency, sec. 739; 2 Corpus Juris, 'Agency,' sec. 287.''

It is, of course, not contended that the carriage of passengers was embraced in Howell's implied powers, but that the trip which he made that day was in part at least for the company, though the taking of the party to the funeral may have been an inducement or perhaps a major consideration, and that there was no hiatus in the relation of master and servant. Howell had no authority to use this automobile for any purpose but the company's business. The jury, it would seem, had the

right to consider that he was obeying orders rather than violating them. It must be recalled there was evidence that he at first declined to take the parties to Counts Cross Roads, but later sent word to them that he had business out there and could take them. Perhaps the jury concluded that, although when he left Ashland he did not have any business beyond Grayson and did agree to take the party six miles beyond and idly wait several hours for them, as he contends, yet when his own car broke down that he took the company's car away from his salesman then at Grayson and went in the salesman's place to the territory beyond Grayson, as he had authority to do. If his sole mission was to accommodate the party, the natural thing to have done when his machine became disabled would have been to let his passengers proceed to their destination in some other way. As we have stated, it was part of the local manager's duties to go out over the territory occasionally and visit every store where its products were being sold and in doing so to see that its advertising matter was being maintained and properly displayed. There was evidence that on this day he called at the store of a customer at Counts Cross Roads and very probably that he went four miles off on a side road to a point where he had two customers; and, furthermore, that during this time when the passengers were at the cemetery he drove three miles beyond there to Olive Hill, where he had other customers. It is true that there is positive and persuasive evidence to the contrary and it fully sustains the defendant's claim. But we are presenting the countervailing evidence and what seems to be reasonable inferences therefrom in order to determine whether an issue of fact was raised by sufficient evidence to authorize submission of the case to the jury.

As respects the character of evidence presented to overcome the prima facie case made by the fact of use of the company's machine by one having authority to use it, the circumstances adduced here, with the justifiable inferences which spring from them, more strongly tend to discredit that evidence than that shown in Crowell v. Padolsky, 98 N. J. Law, 552, 120 A. 23. In that case there was testimony that an automobile which caused an accident bore the license number of the defendant's automobile bus, which the court held justified the presumption of fact that at the time the ma-

chine was being operated by the owner or his servant within the scope of his employment. The defendant then undertook to show by himself and his chauffeur that neither was driving the car during that afternoon, nor was any one else authorized to do so. Upon the authority of another case in that jurisdiction, it was argued that this proof overcame the presumption and that the decision became one for the court, not of the jury. But the appellate court did not follow that rule because, as it is said in the opinion, the defendant went too far, for in addition to what we have related as to their testimony they swore that the machine had not been out of the defendant's yard during the entire afternoon; whereas the defendant had made returns to the city, as required by a licensing ordinance, that the particular bus had operated that day and carried a certain number of passengers; also, that the same contradiction existed as to defendant's evidence that the machine had not been out of his yard on the day following the accident. Said the court:

> "Clearly, under these circumstances, the truth of the testimony offered to rebut the presumption was for the jury, and consequently the entire question became one for the jury to solve, and the learned trial judge was right in refusing to direct a verdict for the defendant."

Another rule of general application is that where it is doubtful whether a servant in injuring a third person was acting within the scope of his authority, the doubt will be resolved against the master because he set the servant in motion, at least to the extent of requiring the question to be submitted to the jury. Crowell v. Duncan, supra; Robards v. P. Bannon Sewer Pipe Company, 130 Ky. 380, 113 S. W. 429, 18 L. R. A. (N. S.) 923, 132 Am. St. Rep. 394.

It seems to the court that this case must be ruled by the Wood Case, where the company's car was being driven by its local manager, and cases in that line, rather than the line of cases of which the Mullen & Haynes Company Case is typical, where the presumption that the driver was acting within the scope of his employment was destroyed by the uncontradicted and harmonious evidence to the contrary. So the evidence must be held sufficient to have carried the case to the jury and to sustain its verdict.

■ It is urged that the trial of the Ellison and Neekamp Cases should have been continued until such time as their injuries could be more reasonably and certainly ascertained, and because of the manner in which they appeared before the jury at the trial. At the beginning of the trial, the defendants moved to discharge the jury and continue the cases upon those grounds. The record discloses that Ellison was on crutches and Neekamp had been brought to court in an ambulance and was before the jury on a hospital cot. Testimony of two physicians was heard by the judge to the effect that it was impossible at the time to tell what the result of their injuries would ultimately be and that by the next succeeding term of court it was reasonably certain that each man could walk with the assistance of a cane or perhaps without it, and that by such time a better opinion could be reached as to the extent of their injuries. The accident occurred March 10th. The petitions were filed March 26th, and the trial began May 20th. There is no minimum time prescribed for filing a suit after a cause of action accrues or for trying it. Every litigant has the right to an early trial if it can be had under the procedural laws and there is no inhibition as to a party's physical appearance or condition in court. This is one of those things that come up in the course of life and of courthouse proceedings; or as is sometimes expressed in the vernacular, it was a "break." We cannot say that the trial court erred in overruling the motion and proceeding with the trial.

■ Some complaint is made as to the instructions, but they seem to have fully presented the issues and to have taken care of the defendants' legal rights.

The judgments are affirmed.

Whole court sitting.