## Davis v. Bennett's Adm'r.

Oct. 3, 1939.

J. S. Forrester, Special Judge.

R. W. Keenon and J. C. Baker for appellant.
Charles B. Spicer for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The administrator of Nolan Bennett filed suit in the Harlan circuit court against the defendant, Garbe Davis, seeking recovery of damages for Bennett's death, alleged caused by the reckless and negligent operation of defendant's automobile or taxicab, when, it was further alleged, it was being driven by his agent and servant, Henry Thomas.

For cause of action, the petition alleged that on the evening of April 7, 1937, the defendant, Garbe Davis (here appellant), was the owner of a 1936 Chevrolet sedan, which he was operating at said time by his driver as a taxicab; that on the evening of the same day, the plaintiff's intestate, Nolan Bennett, was driving his automobile on the public highway in Harlan county between Harlan and Cumberland and was traveling in the direction of Harlan, when at the same time the defendant's car was traveling the same highway in the opposite direction, in going from Harlan to Cumberland; that plaintiff's intestate, Bennett, met the defendant on a down grade curve of said highway, where, by reason of the reckless, careless and negligent way and manner in which defendant's driver was operating his automobile, the car of plaintiff's intestate (Bennett) was forced

to leave the highway to avoid a collision between their cars; that, by reason of said reckless and negligent acts on the part of defendant, the car of plaintiff's intestate (Bennett) was wrecked and Bennett killed.

Defendant answered, first traversing the allegations of the petition and further specifically denied that any car driven by this defendant, owned by this defendant, or operated by any agent, servant or employee of this defendant or on business of this defendant, was on the highway at the time or place referred to in plaintiff's petition; denied that any automobile belonging to this defendant or driven by any agent, servant or employee of this defendant or in the course of this defendant's business, was being operated at the time or place referred to in plaintiff's petition or had any connection with the forcing of plaintiff's intestate's automobile from the highway, if it was forced from said highway. Further, he pleaded that if any car of this defendant was on the highway at the time and place referred to, it was not being operated by any agent or employee of this defendant, or in the course of defendant's business.

By the second paragraph of the answer, defendant pleaded contributory negligence on the part of the deceased Bennett.

Proper pleadings made up the issues.

Upon a jury trial of the case had before the Hon. J. S. Forrester, chosen as special judge to try it, a verdict was returned in favor of the plaintiff against the defendant for damages in the sum of $4,000.

Following the rendition of this verdict and judgment entered thereon, the defendant, here appellant, filed motion for a new trial, assigning some fourteen grounds as reasons for the reversal of the judgment.

The motion being overruled, appellant has here appealed, assigning the following six grounds, which he strongly argues and insists are reasons for reversal of the judgment: (1) Error of the court in admitting incompetent evidence, especially the statement of the witness Joe Moton made as to the hearsay statement of defendant's alleged driver, that the car he was driving belonged to the defendant; (2) error of the court in refusing to give a directed verdict at the conclusion of plaintiff's testimony and at the conclusion of all the testimony; (3) error of the court in permitting plaintiff to

introduce evidence in chief as rebuttal testimony; (4) error of the court in giving instructions Nos. 1 and 2; (5) improper conduct of plaintiff's counsel in his concluding argument to the jury; and (6) that the verdict is against the law and weight of the evidence.

Before undertaking to discuss and dispose of these several alleged errors it is insisted were committed by the trial court, we deem it timely to first make a brief statement of the facts and circumstances, as disclosed by the very conflicting testimony given by the witnesses of the opposing parties, surrounding and causing Bennett's death.

The only undisputed facts disclosed by the record are, it appears, that the deceased, Nolan Bennett, was at the time he met his accidental death upon this occasion, employed as a coal loader at a mine in Benham, near Cumberland; that upon finishing his day's work, on the evening of April 7, 1937, at about dark, he left his home in Cumberland, alone in his car, to drive to Harlan.

The testimony of all the witnesses is in accord as to the course the car was being driven over the highway at the time Bennett was killed, as to which it is agreed that his car was running on its right side of the highway over a down grade in the road, and was entering a curve in the road when it left the hard surfaced part of the highway and ran into a ditch, in which it continued to run for some distance, until, striking a large rock in or across the ditch, his car was caused to swerve to the left, and, running diagonally across the road, plunged over its precipitous left embankment, landing on the railroad tracks below, the accident and fall resulting in the destruction of the car and Bennett's instant death.

The theory of plaintiff's action, brought against defendant for recovery of damages for Bennett's death, is based on the assumption of the existence of the three facts alleged in the petition: (1) That the car, the negligent operation of which (it is alleged) caused Bennett's death, belonged to the defendant; (2) that Henry Thomas, the driver of this car at the time of the accident and charged with its then negligent and reckless operation, was at the time the agent and servant of the defendant; and (3) that Thomas was, upon this occasion when it is claimed he was driving defendant's car as a taxicab, with a passenger from Harlan to Cumber-

land, acting within the course of his employment and in pursuance of the business of the defendant as his principal.

Appropriate pleadings made up the issues joined on these allegations of the petition.

The plaintiff, having alleged the existence of these facts as basic to his right to a recovery of damages, has assumed the burden of proving them. To maintain this burden, he first introduced the evidence of Troy Wallace and Joe Moton, a colored man, directed to show the defendant Davis' ownership of this car involved in the accident and that it was at the time being driven by Henry Thomas as his agent.

Wallace's testimony is that he was driving upon this same highway at the time and near the place where Bennett's accident and death occurred and that, when but a short distance from that place, he was crowded from the right side of the road, where he was traveling, by a Chevrolet sedan, which was being driven at a high rate of speed, on its left side of the road; that he recognized the witness Joe Moton as one of its two occupants and also, although it was then about dark and the car was traveling at a rate of between 45 and 60 miles an hour, he read the license plate of the car as being a Harlan county license, No. 5A826. Further he testified that when thus crowded off the traveled portion of the road, he got two punctures, or two "flats" as he termed them, when he stopped his car, and that, while stopping his car, he looked ahead to where there was a curve in the road; that he there saw the deceased's car run across the road and its left embankment, falling to the railroad tracks below; that he first repaired his tires, which detained him some thirty or forty-five minutes, after which he went to the scene of the accident to discover whether or not the driver of the car that had plunged over the bank had been injured, when he found the car had been wrecked and Bennett killed by the accident.

The clerk of the Harlan county court was called as a witness, who read from his records that the license No. 5A826, witness had seen on the car passing him at the time of the accident, was a taxicab license issued to the defendant, Garbe Davis, as the owner of a 1936 model Chevrolet sedan.

Also, the witness Joe Moton, whom Wallace testified he recognized as an occupant of this Chevrolet sedan

which had passed, crowding him from the road upon this occasion, testified that upon the occasion of the deceased Bennett's accidental death, when driving his car upon the evening of April 7, 1937, from Cumberland towards Harlan, he was traveling as a passenger in the taxicab driven by Henry Thomas from Harlan to Cumberland and that just as they were approaching an "S" curve in the road, Thomas, when driving too far to his left, had crowded Bennett's car from off the hard-surfaced part of the road as he was approaching them on his right side of the road. He states that Thomas, while he was driving with him, told him the car he was driving belonged to Davis. However, he failed to specify at what time during their drive from Harlan to Cumberland and back this statement was made by Thomas, whether it was made at the time of, or before, or after the accident, or whether it had any connection with the happening of the accident.

Further, Moton testified that Thomas had used this car in running a taxicab business for some time in Harlan; that he, Moton, was at the time of the accident running a restaurant business in Harlan, to which Thomas had brought customers.

There were no eyewitnesses to this tragic accident, though several witnesses testified as to visiting the scene of the accident shortly after its occurrence. They testified that the physical facts they saw upon the road (that is, the tracks upon its muddy surface, recognized as having been made by Bennett's car) showed that as he was approaching the curve in the road, he was driving his car on his right side of the road, when suddenly it had turned to the right, where it ran in a ditch for some distance, when striking a rock in it, it came from out of the ditch, swerved to the left and ran in a diagonal course across the road and over its left embankment; that the marks made upon the road by the car showed that Bennett had applied his brakes and had, when in the ditch, so kept his wheels turned thereon as he tried to extricate his car from it

The defendant, Garbe Davis, when testifying for himself, stated that Henry Thomas was not working for him on April 7, 1937, the day of the accident; that he did not have his car on that day nor did he authorize him to take Joe Moton or any body else in any car belonging to him on that day from Harlan to Cumberland;

that Henry Thomas had never worked for him; that Henry Thomas and he were friends and Thomas sometimes used his car, but that Bob Cunningham was his licensed driver; that Cunningham wasn't driving for him at the time of the accident, nor had he been for some time before the accident; he stated that he had loaned his car to Thomas for his personal use, but that he had never driven it as a taxicab for him. Davis, in addition to this testimony, testifies that the Chevrolet sedan was on that day and night (April 7, 1937) stored down in the garage of Mike Borchin for repairs; that on April 6, he and his brother had pushed the car down to the garage to be repaired and that he had gone back for it on the following Thursday, when the man at the garage wouldn't let him have it because he didn't have the money to pay for its repairs; that he wouldn't let him have it until Friday, April 9, which was his pay day; that his car had remained in the garage from April 6 to April 9 and for such reason he stated that Henry Thomas could not have had his car out on the road on April 7, the day on which Nolan Bennett was killed. Further he stated that his Chevrolet sedan was a 1935 model, which he had bought in 1936 and for which there had been issued him a taxicab license No. 5A826; that he had operated it as a taxicab, but that while he had given the car to Thomas for his personal use, he had never driven it for him as a taxi.

Davis was corroborated in his testimony that his car was in the garage for repairs at the time of Bennett's accident, that it had been left at the garage the day before the accident and that the garage had retained possession of it until Friday, April 9, when Davis was permitted to take it out, upon paying for the repair work done on the car, by the owners of the garage.

Henry Thomas also testified that he had not picked up Joe Moton or anybody else in Harlan on the day of the accident and started towards Cumberland with him; that he was not on that day driving any car that belonged to the defendant when working for him; and that he had never driven a taxicab for Garbe Davis as his (Thomas') employer, nor had he driven any car on the day of the accident from Harlan to Cumberland about dark. Further Thomas testified on cross-examination that he had driven the defendant Davis' car whenever he wanted to borrow it; that he wasn't working and Davis would let him have his car sometimes, when he

would go down to Harlan or anywhere he wanted to and haul passengers in the car if he wanted to, though "would not particularly" charge them for hauling them, though he had charged people. Thomas also stated that he had driven defendant's car over a period of five or six months whenever he wanted to.

Further, there was some evidence given by defendant's witnesses that the deceased Bennett, just prior to the happening of his accident, was drinking and in fact intoxicated; that they saw or talked with him shortly before the time of his accident and that he was drinking and badly "in his cups."

As against this, the evidence for plaintiff is that Bennett was not drinking on this occasion, that he was not a drinking man and that he had not drunk anything for some time.

Upon the trial of the case, the court instructed the jury, whereupon it returned a verdict for plaintiff in the sum of $4,000.

Enough has been said to indicate the scope and character of the issues in evidence, and we will now discuss the contentions appellant makes for reversal of the judgment in the order in which they are presented.

It is first insisted that the court admitted incompetent testimony, in that it refused to exclude the testimony of Joe Moton, in which he stated that he got in the car being driven by Henry Thomas in Harlan, who told him that the car belonged to defendant, Garbe Davis. Defendant's objection to this testimony, as to what he had heard Thomas say, as incompetent hearsay evidence was overruled. This evidence bore strongly on the material issues presented in the case, both as to whether defendant was not the owner of the car involved in the accident and as to whether or not Henry Thomas, the driver and in possession of the car, was defendant's agent, acting within the scope of his authority as such agent when making this trip, when it is charged it was so recklessly operated by him as to cause Bennett's death. On the other hand, counsel for appellee contends that this testimony of Moton was competent as a part of the res gestæ.

We are of the opinion that this testimony was not brought within the well-recognized exception to the hearsay rule, in that witness did not show that the al-

leged agent's statement was made by him as a spontaneous utterance at the time of the occurrence of the accident.

The theory of the hearsay rule is that when a human utterance is offered as evidence of the truth asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand and subject to the test of cross-examination. Wigmore on Evidence, Section 1361.

This hearsay rule forbids the use of an assertion, made out of court, as testimony to the truth of the fact asserted, unless such statement was spontaneously made as a part of the res gestæ of the accident, the principle of such exception being, as stated in Wigmore, Section 1747 (1), page 2250, "based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

A like statement of the general principle of this res gestæ exception was given in State v. Wagner, 61 Me. 178, 195, wherein it was said:

"We think that the precise ground upon which their admission (evidence of outcries naming an assailant) should be placed in a case like this, is substantially the same as that upon which dying declarations are declared admissible [i. e. necessity and sincerity.]"

Further, the principle of the exception is thus stated in Travellers' Insurance Company v. Mosley, 8 Wall. 397, 408, 19 L. Ed. 437:

"The res gestæ are the statements of the cause made by the assured almost contemporaneously with its occurrence, and those relating to the consequences made while the latter subsisted and were in progress."

Appellee, we conceive, has altogether failed to bring Moton's admitted hearsay testimony within the scope and principle of the res gestæ rule, in that witness failed to state that Thomas' statement as to Davis being the owner of the car he was driving was made spontaneously at about the time the accident occurred. It is therefore our conclusion that the court prejudicially erred in permitting this extra judicial statement, made by the alleged agent, Thomas, to Moton, to be admitted as a part of the res gestæ. The admission of this hearsay evidence was further objectionable and improper for the reason that its purpose was not only to show that Davis was the owner of the car, but also to raise the presumption that the car being in his possession, he was the agent of the defendant, Davis, in driving it and that he was in the course of his employment, as agent, when it is alleged he wrongfully crowded the deceased's car off his side of the highway, causing the accident in which he was killed.

As said in the recent case of Home Laundry Company v. Cook, 277 Ky. 8, 125 S. W. (2d) 763, 765:

"The use of an employer's automobile by an employee creates the presumption that the employee was engaged in the employer's business at the time of the accident. Ashland Coca Cola Bottling Company et al. v. Ellison, et al., 252 Ky. 172, 66 S. W. (2d) 52; Dennes v. Jefferson Meat Market, Inc., 228 Ky. 164, 14 S. W. (2d) 408. This presumption places upon the employer the burden of disproving such presumption. When the presumption in plaintiff's favor is met by uncontradicted and unimpeached evidence entirely in harmony with that introduced by the plaintiff on the same point, the presumption is overcome."

This presumption was here sought to be overcome by the defendant and the witness Henry Thomas alike, by their testimony that Thomas was not in the possession of the defendant's car on the day of the accident, had never been his agent, or employee, at any time in operating his taxicab business, and that the car in ques-

tion was not being driven by anyone on the night of the accident, but was stored in a garage in Cumberland, where it had been taken for repairs.

In view of such being the forceful and probative character of the evidence given by the defendant, in tending to rebut the presumption of Thomas' agency for him, arising from his alleged possession of the defendant's car, we are inclined to the view that the plaintiff failed to establish the fact, alleged by him, that the defendant was the owner of the car, the alleged negligent operation of which was claimed to have caused Bennett's death.

We are therefore led to conclude that the jury's verdict, based upon its finding the fact of such ownership of the car and the presumed agency of Thomas in its handling for defendant, was flagrantly against the weight of the evidence.

A further contention of the appellant is that instructions Nos. 1 and 2, given by the court, were erroneous upon the ground that their wording was such as assumed the fact in issue as to the defendant being the owner of the car involved in the accident.

Instruction No. 1, so criticised, is in part as follows:

"If the jury believe from the evidence that at the time and place and on the occasion mentioned in the evidence, the defendant's automobile was operated by his driver in the furtherance of his business * * * then the law is for the plaintiff and the jury will so find."

We do not agree that this instruction, though not expressed as clearly as it might and should have been and for such reason might have tended to somewhat confuse the jury, was so defective or improper in form as to have been prejudicially erroneous, especially when the defendant himself offered four or five instructions he regarded as stating the full law of the case, which the court gave and which served to fully cure any obscurity, if any, existing in the instruction given by the court.

The case having been tried by the jury when having before it the instructions offered by the defendant as expressing the whole law of the case, the defendant is not now in a position to complain of the instructions given by the court.

810

It is therefore our conclusion, without specifically discussing the other objections raised but which are embraced in our discussion above, that the plaintiff having failed to show defendant's ownership of the car involved or the agency of Thomas, both alleged as basic facts and grounds upon which his recovery was sought, and the court having erred in admitting Moton's testimony given in proof of such agency, which may well have been the grounds upon which the jury found such agency to exist, with the resulting liability of the defendant for damages, that, when considering the whole record, the defendant has failed to receive a fair trial and that the verdict of the jury is flagrantly against the weight of the competent evidence heard.

Therefore, the judgment is reversed and the cause remanded for a new trial.