15433

ADAMS v. SOUTH CAROLINA POWER COMPANY

(31 S. E. (2d), 17)

October, 1941.

*Mr. Heber R. Padgett*, of Walterboro, Counsel for Appellant,

*Mr. G. L. B. Rivers*, of Charleston and *Mr. J. M. Moorer*, of Walterboro, Counsel for Respondent,

June 25, 1942.

The Opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE:

The question presented by this appeal is whether there is any evidence from which a reasonable inference may be drawn that James W. Blease, the agent and employee of the South Carolina Power Company, was engaged upon the business of the South Carolina Power Company at the time when the injury was inflicted upon the plaintiff. The lower Court directed a verdict in favor of the respondent upon the ground that at the time of the collision which caused the injury and damage to the plaintiff, Mr. Blease had stepped aside from his employer's business for a purpose wholly disconnected with his employment, and that at such time he was bent upon an independent end of his own. The opinion prepared by Acting Associate Justice Stoll, after stating the issue and reviewing the evidence, affirms the

judgment of the Circuit Court. I regret that I am unable to agree with this disposition of the case.

The general rule of law applicable to cases of this kind is well understood. The difficulty arises upon its application to varying and diverse circumstances. The terms "course of employment" and "scope of authority," are not susceptible of accurate definition. What acts are within the scope of employment can be determined by no fixed rule. The authority from the master is generally to be gathered from all the surrounding and attendant circumstances. In cases where the deviation is slight and not unusual the Court may, and often will, as matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, as in *Holder v. Haynes,* 193 S. C., 176, 7 S. E. (2d), 883, the Court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremities will be regarded as involving merely a question of fact, to be left to the jury. 5 Am. Jur. Section 376, page 714.

We have held in numerous cases that if there is doubt as to whether the servant in injuring a third person was acting at the time within the scope of his authority, the doubt will be resolved against the master at least to the extent of requiring the question to be submitted to the jury for determination. *Hyde v. Southern Grocery Stores,* 197 S. C., 263, 15 S. E. (2d), 353; *Cantrell v. Claussen's Bakery,* 172 S. C., 490, 174 S. E., 438; *Matheson v. American Telephone & Telegraph Company* 137 S. C., 227, 135 S. E., 306.

Under the doctrine of *respondeat superior,* it is generally held that the master is liable for the wrongful acts of his servant while acting as such within the scope of his employment. The principle is adhered to that an act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business. *Lazar v. Great Atlantic & Pacific Tea Company,* 197 S. C.,

74, 14 S. E. (2d), 560; *Holder v. Haynes,* 193 S. C., 176, 7 S. E. (2d), 833.

It appears from the evidence in this case that Mr. Blease was not a mere minor employee with limited duties and authority. He held the position of industrial development engineer, whose duty it was to investigate manufacturing and industrial possibilities throughout the territory served by respondent. It was his duty to encourage and obtain if possible the location of manufacturing establishments within the area served with electric power by respondent, to survey and report on the local labor situation in connection therewith, and generally to stimulate the power company's business by traveling over the territory.

In his testimony, Mr. Blease stated that after visiting the County of Hampton in the interest of the company to promote the location of a plywood mill there, he went on to Fairfax, where he usually spent the night while in that section; that about nine o'clock he called up his superior, Mr. Pace, at Charleston, as was his custom, and reported to him what he had done that day and what he planned to do the next day. With reference to his plans for the next day, he testified as follows:

"I was going out in the territory to check about the amount of the gum, * * *.

"Q. All right, when you saw them at the hut near Ehrhardt, then why did you come on down toward Walterboro? A. I had to work the territory the next day, so I decided I would come on down and spend the night with my niece at Walterboro."

At another place he stated:

"Well, I was coming down. I would usually spend the night with them (his niece and nephew) when I was in this territory * * *.

"Q. And you have to travel by Ehrhardt to go from Fairfax to Walterboro? A. Yes, sir.

"Q. That's the most direct route? A. Yes, sir."

The witness further stated that one of the reasons he did not return to Charleston was that "the next day I had to go all around at Ruffin," which point is about fifteen miles from Walterboro and within the territorial area served by the respondent.

While the testimony shows that Mr. Blease made a slight detour from Fairfax to Olar to confer with friends on a personal political matter, he left Olar for Ehrhardt, which was on his direct route, as testified to by him, from Fairfax to Walterboro. He lingered at Ehrhardt upon the same political mission, and left there about one o'clock a. m., for Walterboro. The accident giving rise to the plaintiff's injury occurred at a point on the highway about two miles from Ehrhardt on the road to Walterboro. The testimony shows that it was customary for Mr. Blease to travel by night as well as by day while attending to the business of his employer.

Even though it be conceded that Mr. Blease made a slight departure or deviation from his route and went to Olar for an independent purpose of his own, I think the testimony fully supports the reasonable inference that he had resumed the master's business when he left Ehrhardt on his direct route to Walterboro. The inference is clear from the evidence that Mr. Blease found it convenient in the discharge of his duties to spend the night at Walterboro when he worked the territory around Walterboro and Ruffin. When so engaged he was unquestionably acting within the scope of his employment and in the discharge of his duties. At the time of the automobile collision, it may reasonably be inferred from his testimony that he was traveling to Walterboro on the business of his employer. It is true that in a subsequent portion of his testimony he stated that his visit to Walterboro had to do with politics, but the weight and credibility of his conflicting statements together with all of the attendant circumstances, should have been submitted to the jury.

Viewing the evidence in the light most favorable to ██ the plaintiff, as we must, and keeping in mind that when the question is in doubt the determination of the issue should be submitted to the jury for determination, I think that the lower Court erred in directing a verdict for the defendant.

In *Ashland Coca-Cola Bottling Company v. Ellison*, 1933, 252 Ky., 172, 66 S. W. (2d), 52, 55, the Court observed that the character of employment might have an important bearing upon the weight to be accorded the evidence concerning the matter of present agency, pointing out that the driver of the car was not a mere minor employee, with limited duties and authority, but the resident manager of the defendant company, in direct charge of its business and property, with broad discretionary powers as to how such business should be cared for and as to the manner of performance of some of his duties and declared:

"It seems to us that where the employee's time is not confined and his duties are such as those of Howell's—calling for general supervision and stimulation of the company's business through traveling over the territory, with general authority to use the company's automobile—circumstances tending to support the charge that he was about his master's business assume an importance and call for consideration greater than would the same circumstances were the employee a minor one, such as a bookkeeper or laborer, with stipulated hours of duty and whose usual duties were of an entirely different nature than doing those things which he was doing at the time of the accident." See Annotations in 122 A. L. R., 858, 80 A. L. R., 725, 22 A. L. R., 1397.

It seems to me, under the facts shown here, that the Court should not undertake to make nice distinctions and fix with precision the line that separates the act of the servant from the act of the individual where it may be inferred from the evidence that the act in question occurred at a time when the servant was engaged in the performance or furtherance of matters coming within the general scope of his employment.

In my opinion, the judgment of the lower Court should be reversed and the case remanded for a new trial.

Mr. Chief Justice Bonham, Mr. Associate Justice Stukes, and Circuit Judge E. H. Henderson, Acting Associate Justice, concur.

Circuit Judge Philip H. Stoll, Acting Associate Justice (dissenting): On July 26, 1941, the plaintiff was riding in an automobile on the highway leading from Ehrhardt, South Carolina, to Walterboro, South Carolina, when tire trouble developed and the car was driven to the side of the highway for repairs.

On the same night, James W. Blease, an employee of the South Carolina Power Company, was driving an automobile from Ehrhardt to Walterboro. This car was the property of the South Carolina Power Company.

There was a collision between the car driven by James W. Blease and the parked car. In this collision Quillie Major Adams, the plaintiff, was injured.

The allegations of the complaint are in the usual form for personal injuries. The answer of the defendant, among other defenses, alleged that the driver of the defendant's automobile at the time of the collision was not engaged on business of his company.

On the conclusion of the testimony the presiding Judge directed a verdict for the defendant on the ground that the testimony was susceptible of no other reasonable conclusion than that the servant of the defendant was not engaged in his master's business at the time of the injury.

This appeal raises only one question. Did the trial Judge err in directing a verdict for the defendant? This question hinges on whether or not Mr. Blease, the driver of defendant's automobile, was on the company's business at the time the accident occurred.

It is admitted that Mr. Blease was an employee of the South Carolina Power Company, and at the time of the collision, was driving an automobile that was the property of the company.

Whether Mr. Blease was on the company's business at the time of the collision must be ascertained from his own statements made to others immediately after the accident, and from his testimony on the trial of the case.

Mr. Blease testifying for the defendant, said that he had been to Hampton to see Senator George Warren on business for the company, which he finished about five o'clock in the afternoon. He then went to Fairfax, where he usually spent the night when in that section. About nine o'clock he decided to go over to Olar to see some friends on a political mission, and that he was not attending to any business at that time for the company. After seeing his friends at Olar he decided to go to see some other friends near Ehrhardt. After seeing these friends and when near Ehrhardt he decided to go to Walterboro as he had to work that territory the next day. He then stated that he went to Walterboro to spend the night with his niece and that his trip there had nothing to do with his duties to the power company, but was purely political; that he was out "politicing" for his friend, the Honorable Butler Hare. It was while on his way to Walterboro that the accident occurred.

Booker McTeer, a witness for the plaintiff, testified that Mr. Blease said to him immediately after the collision: "Boy, I am working for the South Carolina Power Company and they will take care of all the damages." Also that Mr. Blease said to him: "Boy, don't run into that fire. You know you will get burned and the power company will take care of that damage, and you could not put it out any how." Also: "I am working for the South Carolina Power Company. I hit you and the Power Company will pay your damages."

Harold Padgett, a witness for the plaintiff, testified that Mr. Blease told him that "He ran into a car almost in the city limits of Ehrhardt; that he was working for the Power Company, and he also asked me if I would get the manager, Mr. Paul Lucas, who was in charge of this district of the Power Company, and have the car brought in."

From the foregoing testimony it must be determined whether or not Mr. Blease was engaged in his master's business at the time of the accident.

To my mind an analysis of the testimony definitely fixes the following facts:

First: Mr. Blease was an employee of the power company.

Second: The car driven by Mr. Blease was the property of the power company.

Third: Mr. Blease's mission for the power company in that territory was to see Senator George Warren at Hampton, and that mission was over.

Fourth: That according to his custom, Mr. Blease intended to spend the night at Fairfax and went there for that purpose.

Fifth: That after nine o'clock that night he decided to visit some friends at Olar and others near Ehrhardt in the interest of the candidacy of Honorable Butler Hare for the United States Senate.

Sixth: That Mr. Blease did visit his friends near Olar and Ehrhardt.

Seventh: That he decided to go from Ehrhardt to Walterboro to visit a niece and to do more political work.

Eighth: That the accident happened after he left Ehrhardt.

Ninth: But for his political trips that night for his friend he would have spent the night at Fairfax.

Tenth: But for his political trips the accident would not have occurred.

I agree with Judge Grimball that the only reasonable inference to be drawn from the testimony is, that at the time of the accident Mr. Blease was not engaged in his master's business, but that he was out on a political matter, entirely divorced from his employment.

The fact that he was in the employ of the power company and that at the time of the accident he was using his employer's automobile is not sufficient. He also at the time

must have been acting within the scope of his employment. He must have been engaged in his master's business. All the facts in the case negative any such conjecture.

In *Holder v. Hayne et al.*, 193 S. C., 176, 7 S. E. (2d), 833, 838, the present Chief Justice reviewed the doctrine of *respondeat superior* in a most lucid and comprehensive opinion which removed all doubt as to its proper application.

We quote two excerpts from *Holder v. Hayne et al.*, that apply with particular force to the case we are now reviewing:

"The rule is also well settled that the master is not responsible for the tort of his servant when done without his authority and not for the purpose of executing his orders, or while doing his work, but wholly for the servant's own purposes and in pursuit of his private or personal ends."

"The general rule is that a servant in charge of his master's automobile, who, though originally bound upon a mission for his master, completely forsakes his employment and goes upon an errand exclusively his own, and while so engaged commits a tort, does not thereby render the master answerable for such tort under the rule of *respondeat superior*."

All exceptions should be overruled and the judgment affirmed.