# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 15, 2018
NOT TO BE PUBLISHED

## Supreme Court of Kentucky FINAL

DATE 3/8/18 Kim Redmon, DC

2015-SC-000714-MR

JIMMY HALL            APPELLANT

ON APPEAL FROM BUTLER CIRCUIT COURT
V.         HONORABLE RONNIE C. DORTCH, JUDGE
NO. 14-CR-00059

COMMONWEALTH OF KENTUCKY           APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART, VACATING IN PART, AND REMANDING**

Jimmy Hall appeals as a matter of right from a judgment of the Butler Circuit Court sentencing him to two terms of life imprisonment plus twenty years for first-degree unlawful transaction with a minor (two counts); use of electronic communications systems to procure a minor; and for being a first-degree persistent felony offender. Hall alleges that the trial court erred by: 1) precluding him from playing the entirety of his recorded statement to police; 2) barring him from asking questions of a witness during cross-examination; 3) failing to give the jury a requested instruction; 4) permitting the introduction of inadmissible testimony; and 5) imposing an illegal sentence. After careful consideration of the record, we conclude that Hall's convictions were proper. However, the trial court abused its discretion by ordering Hall's life sentences to run consecutively with each other and with his sentence of twenty years'

imprisonment. As such, we affirm in part, vacate in part, and remand for entry of a corrected sentence consistent with this Opinion.

## FACTS AND PROCEDURAL HISTORY

In June 2014, when Jane was twelve years old she met Hall, who was fifty-six years old, through "Live Links" -- a telephone chat line.[1] During their conversation, Jane informed Hall that she was twelve years old. Hall, who falsely claimed to be eighteen years old, requested to meet Jane and that she send him nude photographs. Subsequently, Jane and Hall exchanged sexually explicit photographs. The following day, Jane met Hall at a park in Morgantown, Kentucky. Although Jane realized he was not eighteen years old, she traveled with him to the Green River Lodge where Hall obtained a room for the night. Later, Jane and Hall engaged in oral sodomy and vaginal intercourse. The following morning Hall dropped Jane off near her home. Jane's mother thought Jane had spent the night at a friend's house.

Several days later, Jane admitted her encounter with Hall to her mother, who reported the incident to the police. Officer James Embry of the Morgantown Police Department was assigned to investigate. While Officer Embry was interviewing Jane, Hall contacted her via text messaging, and at Officer Embry's direction, Jane responded. During their text conversation Hall indirectly admitted to having sexual intercourse with Jane. Hall also requested

---

[1] The name of the minor victim in this opinion has been replaced with a pseudonym to preserve her privacy.

that Jane call him. Subsequently, Jane placed a call to Hall, which was recorded by Officer Embry. At one point in their conversation Hall asked her, "[y]ou still don't know if you're pregnant, right?" Jane later ended the conversation after becoming too upset to continue talking.

Jane did not know "Jimmy's" last name but based on her description of him and his vehicle, Officer Embry was able to locate Hall in Breckinridge County, where he was apprehended by the authorities. Subsequently, Officer Embry interviewed Hall, who admitted to visiting Morgantown and having sexual intercourse with a girl there, but denied knowing the girl's age or name. However, he contradicted this the following day, in a second interview with Officer Embry. In that second interview, which Hall initiated from jail, he admitted that he had met Jane on a chat line. While chat users were supposed to be eighteen years old, Hall admitted that anyone could get on the line. Further, Hall told Officer Embry that "[Jane] did state on the chat line that she was thirteen [years old]." Later, he reiterated that Jane had told him that she was thirteen years old. Hall confessed to Officer Embry that he had received nude photographs of Jane and that they had engaged in sexual intercourse.

Hall was indicted by the Butler County Grand Jury in July 2014, for first-degree rape, use of electronic communications systems to procure a minor, first-degree unlawful transaction with a minor, attempted unlawful transaction with a minor, and for being a first-degree persistent felony offender. The indictment was later amended to add an additional count of first-degree unlawful transaction with a minor, while removing the charge of

3

first-degree rape. Additionally, the charge of attempted unlawful transaction with a minor was dismissed by motion of the Commonwealth prior to the case being submitted to the jury. Hall was convicted of all charges, and the jury recommended life imprisonment for each count of first-degree unlawful transaction with a minor and twenty years for the use of electronic communications systems to procure a minor. The jury also recommended that Hall's life sentences run consecutively with each other and with his sentence of twenty years' imprisonment. The trial court sentenced Hall in conformance with the jury's recommendation. Hall brings this appeal as a matter of right.

## ANALYSIS

### I. The Trial Court Did Not Err by Refusing to Play Hall's Taped Statement in its Entirety to the Jury.

Hall argues that the trial court erred by not playing the entirety of his recorded statement to Officer Embry, leaving the jury with "an incomplete and misleading impression" of his interview with the police. Prior to trial Hall requested that if the Commonwealth intended to play portions of his recorded interview with Officer Embry that the entire recording be played for the jury.[2] Hall's request was denied. Prior to opening statements, Hall renewed his request to play the entire recording. The trial court again denied his request and reiterated its conclusion that the portions of the recording omitted by the Commonwealth were inadmissible.

---

[2] It appears that this request was discussed at a pretrial conference which due to the unavailability of recording equipment was addressed off the record.

4

Kentucky Rule of Evidence (KRE) 106, which sets forth the so-called rule of completeness, states that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." "[H]owever, Rule 106 does not open the door to a routine use of other parts of a writing or recording (or related writing or recording), only to parts (or related items) that should be produced 'in fairness' to the opposing party." *Jenkins v. Commonwealth*, 496 S.W.3d 435, 464 (Ky. 2016) (*quoting* Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 1.20[2][b] (5th ed. 2013)). In assessing fairness, "the issue is whether 'the meaning of the included portion is altered by the excluded portion.'" *Sykes v. Commonwealth*, 453 S.W.3d 722, 726 (Ky. 2015) (*quoting Young v. Commonwealth*, 50 S.W.3d 148, 169 (Ky. 2001)). We review the trial court's determination regarding KRE 106 under an abuse of discretion standard. *Id.* (*citing Commonwealth v. Stone*, 291 S.W.3d 696, 703 (Ky. 2009)).

In the case at bar, Hall has failed to demonstrate how the excluded portions of his statement would have altered what the jury actually heard. The Court's review of this issue is hampered by the fact that the full recording was not made a part of the record, nor were the relevant excluded portions of Hall's statement quoted in his brief. Instead, Hall offers speculation concerning the parts of his recorded statement to the police that the jury did not hear. As an example, Hall notes that in one portion of the recording (which the jury heard)

5

he admitted that Jane had informed him that she was thirteen years old. Hall then argues that given his tone of voice, "it seems likely the portion played by the prosecution was an incomplete thought." However, Hall does not supply the Court with the relevant excluded part of his recorded statement to allow us to confirm whether his point is accurate and, if so, whether the redaction materially altered what the jury heard. Similarly, in response to the portion of the recording where Hall admits that "[Jane] looked young," he argues that this was in the middle of a thought. Hall contends that his full thought "probably communicated [his] belief that Jane was [eighteen]." Again, this speculation is insufficient. Hall's failure to provide the excluded portions of his statement and explain how these portions would have altered the jury's understanding of the portions of the recording the jury heard bars relief. *See, e.g. Meece v. Commonwealth*, 348 S.W.3d 627 (Ky. 2011) (finding no error where the defendant failed to advise the appellate court how his statement to police was taken out of context to mislead the jury as to its meaning); *Soto v. Commonwealth*, 139 S.W.3d 827 S.W.3d 827, 865-66 (Ky. 2004) (no violation of KRE 106, where defendant failed to articulate how missing pages of an incriminating statement would have altered the portion that was introduced at trial).

## II. The Trial Court Properly Limited Hall's Cross-Examination of Officer Embry.

Hall argues that the trial court further erred by precluding him from asking two questions of Officer Embry during cross-examination. After Officer

6

Embry testified that Hall had initiated a second interview, he was asked, "[d]id [Hall] indicate why he wanted to do the interview?" The Commonwealth objected to this question and the trial court sustained the objection. Hall insists the question went to his willingness to cooperate and his belief that Jane was eighteen years old.

Shortly thereafter, Hall asked Officer Embry, "[d]id you have occasion to examine anything on the victim's cell phone that she shared with her mother?" The Commonwealth objected and a bench conference was held. During that bench conference, Hall explained that he was seeking to address the implication that he had thrown away a cell phone that had incriminating material. Additionally, Hall explained that whatever had been on that phone would have also been on Jane's cell phone, which he had sought to obtain information from. The Commonwealth disagreed with Hall, maintaining that there had not been an implication that he had disposed of a cell phone, but simply that he had four cell phones. The bench conference continued with a discussion of testing that had been performed on Jane's cell phone. The Commonwealth explained that by the time Jane's cell phone was obtained no information prior to July 2014 was able to be recovered. Hall stated that he wanted to demonstrate that he was trying to obtain information from Jane's phone and clear up the implication that he had destroyed or hidden a phone. Hall informed the trial court that he ultimately wanted to ask Officer Embry if he was aware that Hall made a request to see Jane's phone records. The trial court was unwilling to permit that question without a proper basis being

established. Afterwards, the trial court sustained the Commonwealth's objection to the question about examination of Jane's cell phone and told Hall to rephrase his question. In open court, Hall then asked Officer Embry, "[d]id you find any information on any phone indicating that [Hall] knew her age?" Officer Embry replied, "[n]ot that I recall sir."

While this Court has acknowledged the wide latitude afforded to criminal defendants in conducting cross-examination that right is not without limits. *Goncalves v. Commonwealth*, 404 S.W.3d 180, 203 (Ky. 2013)). "Trial courts retain 'wide latitude' in imposing 'reasonable limitations' on cross-examinations . . . that are harassing, confusing, repetitive, or only marginally relevant." *Id.* (*quoting Star v. Commonwealth*, 313 S.W.3d 30 (Ky. 2010)). A trial court's limitation on cross-examination is reviewed for abuse of discretion. *Id.* (*citing Nunn v. Commonwealth*, 896 S.W.2d 911 (Ky. 1995)).

The trial court properly sustained the Commonwealth's objection to Hall's question asking Officer Embry to identify Hall's motivation in seeking a second interview. The information that Hall sought to introduce through Officer Embry's testimony, *i.e.,* that Hall thought Jane was eighteen, was inadmissible hearsay. Absent an exception, the "hearsay rule forbids the use of an assertion, made out of court, as testimony to the truth of the fact asserted . . . ." *Barnes v. Commonwealth*, 794 S.W.2d 165 (Ky. 1990) (*quoting Davis v. Bennett's Adm'r*, 279 Ky. 799, 132 S.W.2d 334, 338 (1939)). Hall's question would have had Officer Embry identify Hall's explanation for wanting a second interview, which was made out of court, and was being introduced for

8

the truth of the matter asserted. As Hall's question would produce a hearsay response, and given that Hall did not identify an exception warranting its introduction, the trial court correctly barred this question.

Similarly, the trial court did not abuse its discretion in sustaining the Commonwealth's objection to Hall's second question concerning examination of Jane's cell phone. While the trial court sustained the Commonwealth's objection, it was clear that the trial court's ruling did not foreclose further questioning regarding this line of inquiry. Rather, Hall was explicitly directed to rephrase his question. However, rather than doing so, Hall changed the focus of his inquiry, asking if any information was recovered on any cell phone that would establish he knew Jane's actual age. As such, we agree with the Commonwealth that Hall abandoned the line of questioning concerning the examination of Jane's cell phone waiving review of his claim regarding this issue.

### III. The Trial Court Properly Instructed the Jury.

Hall contends that the trial court erred by not including an instruction providing him an affirmative defense to the lesser-included offenses of second-degree rape and second-degree sodomy. The jury received instructions on these offenses as lesser-included offenses of unlawful transaction with a minor in the first degree.

At the close of the Commonwealth's case-in-chief, Hall decided not to testify or put on any proof in his defense. As noted, the jury heard, as part of the Commonwealth's case, some of Hall's statements to Detective Embry.

9

Subsequently, the trial court discussed with counsel its proposed jury instructions. In conformance with the amended indictment, the trial court intended to instruct the jury on first-degree unlawful transaction with a minor (two counts) and unlawful use of electronic means to induce a minor to engage in a sexual activity. Additionally, the trial court planned to instruct the jury on two lesser-included offenses to first-degree unlawful transaction with a minor – second-degree rape and second-degree sodomy.

While Hall did not object to the trial court's instructions, he requested that the trial court add an instruction based on the wording in Kentucky Revised Statutes (KRS) 510.030 to address the charges of second-degree rape and second-degree sodomy. KRS 510.030 provides that:

> [i]n any prosecution under this chapter in which the victim's lack of consent is based solely on his incapacity to consent because he was less than sixteen (16) years old, an individual with an intellectual disability, mentally incapacitated, or physically helpless, the defendant may prove in exculpation that at the time he engaged in the conduct constituting the offense he did not know of the facts or conditions responsible for such incapacity to consent.

Unlike first-degree unlawful transaction with a minor, second-degree sodomy and second-degree rape do not require the Commonwealth to prove the defendant's knowledge of the victim's inability to consent based on age. KRS 510.050; KRS 510.080. Accordingly, Hall sought the inclusion of an instruction under KRS 510.030 which would provide him with an affirmative defense based on his alleged lack of knowledge of Jane's age to absolve him of the lesser-included offenses of second-degree rape and second-degree sodomy.

10

The Commonwealth opposed the giving of this instruction arguing that Hall had not presented a defense based on Jane's age and that the evidence in the case established Jane to be a minor and Hall's awareness of that fact. Hall responded to this argument by claiming that the defense had been presented through cross-examination. After considering the arguments of counsel, the trial court declined to present the instruction to the jury.

This argument is properly preserved, and we review the trial court's refusal to give a jury instruction for abuse of discretion. *Hunt v. Commonwealth*, 304 S.W.3d 15, 31 (Ky. 2010) (*citing Williams v. Commonwealth*, 178 S.W.3d 491, 498 (Ky. 2005)). "The trial court is required to instruct the jury on the 'whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony.'" *Murphy v. Commonwealth*, 509 S.W.3d 34, 48 (Ky. 2017) (*quoting Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999)).

The trial court properly denied Hall's request for an instruction providing him an affirmative defense based on the victim's age as it was not supported by the evidence. Hall contends that a presumption was created in his mind that Jane was eighteen years old due to her use of the chat line. Specifically, he points to testimony from Officer Embry that the chat line was for adults and Jane's statement that a person using the chat line was required to be eighteen years old.

However, Hall's "presumption" argument is dealt a death blow by two separate portions of his recorded statement to police, in which he admitted that

11

Jane had informed him that she was thirteen years old. Additionally, while Hall attempted to rationalize his sexual activity with Jane in closing argument by arguing: 1) that his outpouring of affection and desire to be with her demonstrated his belief she was of age; 2) that Jane had lied to her mother, so the jury could not be sure that she did not lie to him about her age; and 3) that Jane looked older than her age; Hall had no explanation for his damning statements to police which demonstrated his knowledge of Jane's age. Accordingly, given that the evidence was undisputed that Hall was aware of Jane's young age, he was not entitled to an instruction based on his supposed lack of knowledge regarding her age.[3]

**IV. The Housekeeper's Testimony Did Not Constitute Palpable Error.**

Hall argues that the trial court permitted the introduction of irrelevant and prejudicial testimony from Marie Smith, a housekeeper at the Green River Lodge. In Smith's testimony, the sum of which lasted approximately ninety seconds, she informed the jury that she had cleaned the room used by Hall during his encounter with Jane. Smith explained that while cleaning the room, she discovered blood on a bed sheet, and that due to this she disposed of the bedding.

---

[3] Additionally, we conclude that even if Hall had been given an instruction for an affirmative age-based defense to second-degree rape and second-degree sodomy it would have been rejected by the jury. We come to this determination due to the jury returning a guilty verdict for both counts of first-degree unlawful transaction with a minor. In order to convict Hall of that offense, the jury had to find beyond a reasonable doubt that he was aware that Jane was less than sixteen years of age. Given the jury's verdict, it is clear that they rejected Hall's age-based defense.

12

Acknowledging that this issue is not preserved, Hall requests that the Court review this alleged error for palpable error under Kentucky Rule of Criminal Procedure (RCr) 10.26. The palpable error rule mandates reversal when "manifest injustice has resulted from the error." *Elery v. Commonwealth*, 368 S.W.3d 78, 98 (Ky. 2012) (*quoting* RCr 10.26). In considering whether there has been manifest injustice, the Court focuses "on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

Hall contends that Smith's testimony was irrelevant as the Commonwealth's theory of the case concerned consensual intercourse and oral sodomy with a minor. As the Commonwealth's case depended on Jane's status as a minor, rather than the use of force to initiate the sex acts at issue, the presence of blood on the sheets was irrelevant. Further, Hall argues that the admission of Smith's testimony constituted palpable error as it implied forcible compulsion and by doing so, "introduce[ed] a highly emotional but unnecessary aspect into an already sensitive case."

The Commonwealth tacitly concedes that the admission of Smith's testimony was improper, but contends that the error was harmless. "A non-constitutional evidentiary error is deemed harmless 'if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error.'" *Gaither v. Commonwealth*, 521 S.W.3d 199, 205 (Ky. 2017) (*quoting Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009)). Because this

13

issue is unpreserved, however, the correct standard of review is the higher palpable error standard, *i.e.*, manifest injustice.

While the admission of Smith's testimony was error as it was not relevant to a fact in dispute in Hall's case, the error was not palpable. Smith's testimony was very short, constituting less than two minutes of Hall's two-day trial. Moreover, the evidence of Hall's guilt was overwhelming. Based on Hall's recorded admissions to the police and Jane's testimony, his guilt was conclusively established at trial. There was no manifest injustice arising from the admission of the housekeeper's fleeting testimony. Accordingly, the admission of Smith's testimony did not constitute palpable error.

## V. The Trial Court Imposed an Illegal Sentence.

Hall also claims that the trial court erred by ordering his sentences to run consecutively. In the trial court's judgment, Hall was sentenced to consecutive life sentences for each of the first-degree unlawful transaction with a minor convictions. Additionally, the trial court ordered that Hall's twenty-year sentence for use of electronic communications systems to procure a minor was to run consecutively to his life sentences. As conceded by the Commonwealth, this was error.

It is well established that life sentences may not be ordered to run consecutively. *Bedell v. Commonwealth v. Commonwealth*, 870 S.W.2d 779, 783 (Ky. 1994). Nor, when imposed as a result of the same trial, may a sentence for a term of years run consecutively with a life sentence. *See v. Commonwealth*, 746 S.W.2d 401, 403-04 (Ky. 1988). While the trial court

14

erred in ordering Hall's sentences to run consecutively, the relief requested by Hall of a new sentencing hearing is inappropriate. Rather, the appropriate remedy is the remand of this case to the trial court for entry of a corrected judgment clarifying that Hall's sentences are to run concurrently with each other.

## CONCLUSION

For the foregoing reasons, we affirm Hall's conviction, vacate his sentence, and remand this case to the circuit court for entry of a corrected judgment consistent with this Court's Opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Samuel N. Potter
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General